LOTTINGER, Judge.
This is an appeal by Gloria Bockrath (Bockrath), plaintiff, from the Civil Service Commission (Commission) ruling which allowed salary overpayments inadvertently made to Bockrath by defendant, Department of Health and Human Resources (DHHR), to be recovered. From that decision of the Civil Service Commission, plaintiff appeals.
The opinion of the Civil Service Commission very clearly sets forth the facts as well as the reasoning of the Commission, and we therefore quote the opinion in its entirety.
Appellant [Bockrath] is employed by the Department of Health and Human Resources and is serving with permanent status.
On March 4, 1985, counsel on behalf of appellant filed a request for appeal wherein appellant complains of the action of the Department of Health and Human Resources (hereinafter referred to as DHHR) in seeking to recoup a salary overpayment from her. Appellant alleges that on January 30, 1985, she received a telephone call from DHHR payroll wherein she was told that she had been overpaid by $892.25 and that she inquired about the matter and received response dated February 26, 1985, from Lynn Jackson, the Administrator of DHHR’s Bureau of Operations. Appellant contests the accuracy of some points in Ms. Jackson’s letter. Appellant contends that her pay was summarily reduced from $1680 per month to $1615 per month on February 15, 1985, and that she is entitled to notice of this prejudicial action and an opportunity to be heard on the propriety and accurateness of the action. Appellant also contends that even if the State’s action has some basis, any error which may have been made, which error is denied, was not appellant’s and therefore the cost of verifying the re-calculations and appellant’s attorney’s fees should be borne by the State. The letter from Ms. Jackson, which is attached to the request for appeal, indicates that on December 14, 1984, DHHR was notified by the Department of State Civil Service (hereinafter referred to as DCS) that appellant’s pay upon reallocation on December 15, 1983, was calculated incorrectly.
By letter dated March 20, 1985, counsel for appellant filed another letter wherein he clarifies his previous letter. Counsel states that since he learned that the action was taken at DCS’s direction, he wants DCS to provide to appellant notice of the intended action, the authority therefor and notice of an opportunity to question the actions.
By letter dated April 4, 1985, counsel for DCS explained to counsel for appellant how the error had been made. DCS contends that appellant was employed by the Department of Education at a monthly salary of $1443.75, when she was brought into the classified service in August 1982 and that appellant’s salary was “red circled” at that rate; that on June 20, 1983, appellant transferred to DHHR and brought her “red circle” rate with her; that on October 10, 1983, appellant received a step increase which, on paper, increased her true rate to $1464 per month, which exceeded and therefore eliminated the “red circle” rate; that the form granting appellant’s step increase effective in October 1983 was not received by DCS until October 1984; that DCS’s review of the form indicated that appellant’s true rate as of October 10,1983, should have been $1398 per month instead of $1464 per month; and that when appellant was reallocated to the position of Women’s Advocacy Bureau Field Coordinator II in December 1983, appellant’s incorrect true rate was used to establish appellant’s pay. This appeal has been docketed against both DHHR and DCS.
A public hearing was held before the State Civil Service Commission on September 4, 1985, in Baton Rouge. Based on the stipulations and documentary evidence presented and the post-hearing memorandum filed *768 on behalf of appellant, the Commission makes the following findings.
STIPULATIONS
1. Gloria Bockrath entered the state classified service from the state unclassified service with the State Department of Education on August 3, 1982, as a Rehabilitation Counselor II with an anniversary date based upon prior service of October 10, 1982.
2. At the time of appellant’s entry into the classified service, her true rate of pay was established by the Department of State Civil Service with a red circle pay rate of $1,443.75.
3. Effective October 10, 1982, appellant’s anniversary date, she was given a step increase in her true rate from $1,279 to $1,337.
4. Effective June 20, 1983, appellant was transferred to the Department of Health and Human Resources in the same class of Rehabilitation Counselor II.
5. In March, 1984, effective October 10, 1983, appellant was given a step increase in her true rate from $1,398 to $1,464 and was verbally advised of these true rates for the first time.
6. On October 18, 1984, the Department of State Civil Service received the SF-1 submitted for that step increase, noted that the step increase should have been from $1,337 to $1,398, and caused that SF-1 to be corrected to reflect the correct amounts.
7. Prior to such correction, appellant had been reallocated from the position of Rehabilitation Counselor II to the position of Women’s Advocacy Bureau Field Coordinator II effective December 15, 1983, with her pay upon reallocation based upon the incorrect pay level at the Rehabilitation Counselor II of $1,464.
8. The pending action report of the new LAPPS system that reflected this reallocation was received by the Department of State Civil Service on August 10, 1984, and on November 20, 1984, was disapproved based upon the incorrect rate of pay.
9. Effective from October 10, 1983, through February 15, 1985, appellant received pay at an incorrect level based upon these allocations and effective February 15, 1985, she was returned back to the correct level of pay. Appellant has been verbally advised that the amount of this overpayment totals $895.25.
10. Appellant received this incorrect level of pay as a result of an innocent clerical error occurring in the Personnel Office of the Department of Health and Human Resources and at no time was appellant aware that such pay was incorrect. Except for the correspondence in paragraph eleven below, the only written notification received by appellant of her classification and rates of pay are shown in Joint Exhibit # 3.
11. The written correspondence received by appellant regarding the correct level of her pay consisted of a letter dated February 5, 1985, from Kathy Townsend to Herb Cannon, the Chief of the Personnel Management Division of the Department of State Civil Service, a letter dated February 28, 1985, to herself from Herb Cannon, and a letter dated April 4, 1985, to Foye L. Lowe, Jr., from Robert R. Boland, Jr. with each letter being received on or about the date of each.
12. Appellant was verbally notified in the latter part of January 1985, that her pay was at an incorrect level, and despite attempts by her to obtain a verbal explanation, she obtained none and was advised by the Department of Health and Human Resources Personnel Office that the letter of February 5, 1985 had been sent to Herb Cannon of the Department of State Civil Service in order to obtain a full explanation. • Appellant’s pay was first reduced on February 15, 1985.
FINDINGS OF FACT
1. Between April 10, 1978 and June 13, 1980, appellant was employed as a part-time Academic Counselor I at Louisiana State University in an unclassified position.
2. Between June 2,1980 and June 6, 1982, appellant was employed as a full-time Counselor for the Department of Education in an unclassified position.
*769 3. Between June 7, 1982 and August 2, 1982, appellant was employed as the full-time Director of the Displaced Homemakers Center, which was also an unclassified position.
4. Effective August 3, 1982, appellant’s position was brought into the classified service and was allocated as a Rehabilitation Counselor II. At the time appellant’s position was declared to be in the classified service, she was earning $1,443.75 per month.
CONCLUSIONS OF LAW
When appellant’s position was declared to be in the classified service, the establishment of her pay was governed by Civil Service Rule 6.28(a), which reads, in pertinent part, as follows:
6.28 Pay Adjustments Required by Action of Director/Commission.
[[Image here]]
(a) Employees entering the classified service because their positions have been declared to be in the classified service shall have their pay established as follows:
1. On or before the date of appointment, the Director shall establish the employee's eligibility for pay at the step in the range for the class to which his position has been allocated for which he would have attained eligibility under the provisions of Rule 6.15, had his position been in the State Classified service during his prior service. This rate shall be referred to as his true rate of pay and may be moved upward as the employee attains eligibility for pay increases under other provisions of these Rules.
[[Image here]]
3. If the employee’s current rate exceeds his true rate, his pay shall be frozen at that current rate for a period of 24 months commencing from the date of appointment in the classified service or until his true rate exceeds his current rate
4; If, during the 24 month period, the employee’s true rate exceeds his current rate, his pay may be increased to his true rate. If, at the end of the 24 month period, the employee’s current rate still exceeds his true rate, his pay shall be reduced to his true rate. Thereafter, his pay shall be governed by other applicable Rules.
[[Image here]]
Thus, under Civil Service Rule 6.28, when a position is declared to be in the classified service, the employee’s true rate of pay must be established. In this case, appellant had been employed in unclassified positions between April 10, 1978 and August 2, 1982. Had she been in the classified service, she would have become eligible, under Civil Service Rule 6.15 for a step increase six months after her initial appointment, and every year thereafter. Thus, appellant would have become eligible for step increases on October 10, 1978, October 10, 1979, October 10, 1980 and October 10, 1981. Therefore, had she been a classified employee, appellant would have advanced to the 4th step of her pay range. The 4th step in the pay range for Rehabilitation Counselor II, which is assigned to pay range GS-19, was $1,279 per month. Therefore, appellant’s true rate of pay as of August 3, 1982, was properly established at $1,279 per month, which was less than her current rate of pay of $1,443.75. Pursuant to Civil Service Rule 6.28(a)3, appellant’s pay was frozen or “red circled" at $1,443.75.
Annual merit increases are governed by Civil Service Rule 6.15(a), which provides as follows:
6.15 Salary Step Increases.
(a) Subject to the provisions of other Sub-sections of this Rule, when a new employee has been continuously employed, without a break in service of one or more working days, for a period of six months, he becomes eligible for and may be granted a one-step increase in pay.
At the end of each twelve-month period of such continuous employment thereafter he becomes eligible for and may be granted one additional step *770 increase. As long as the employee occupies the same, an equivalent, or a lower class position the appointing authority may at any time grant him any increase or increases for which he has attained eligibility. For the purpose of this Sub-section, a part-time employee shall receive the same credit he would receive if he were employed on a full-time basis.
Therefore, on her anniversary date of October 10, 1982, appellánt became eligible for a one step increase in pay. This would have increased her true rate from the 4th step to the 5th step or from $1,279 to $1,337 per month. On her anniversary date of October 10, 1983, appellant became eligible for another one step increase in pay. Thus, as of October 10, 1983, appellant’s true rate should have increased from the 5th step to the 6th step or from $1,337 to $1,398 per month. Therefore, until December 15, 1983, the effective date of her reallocation, appellant’s highest permissible rate of pay was $1,443.75 per month (her “red circle” rate) because her true rate of pay had not yet exceeded that amount.
On December 15, 1983, appellant was reallocated. Pursuant to Civil Service Rule 6.23, pay upon reallocation is governed by Civil Service Rule 6.5, which reads, in pertinent part, as follows:
6.5 Rate of Pay Upon Promotion
[[Image here]]
(C) The rate of pay of an employee who is being paid at a rate between the minimum rate and the maximum rate prescribed for the class of position to which he is promoted but not corresponding with any specified rate of such scale, shall be adjusted to the next higher step. If such adjustment does not equal one full increment in the pay range for the new class he may, in addition to the adjustment, be granted at the discretion of the appointing authority not to exceed two step increases in the new range, provided that his new rate of pay shall not exceed the maximum of the range for the new class.
The class of Women’s Advocacy Bureau Field Coordinator II, is assigned to pay range GS-24. The pertinent steps in GS-24 are: $1,395 — 2nd step; $1,444 — 3rd step; $1,496 — 4th step; $1,553 — 5th step. Under Civil Service Rule 6.5(c), appellant was entitled to be placed on the step in the new pay range which exceeded her former true rate of pay ($1,398). This would require a salary adjustment to $1,444, the 3rd step. Because the actual pay increase ($46) was less than a full step in the new pay range ($49), appellant could be given two additional steps. Therefore, appellant’s highest permissible rate of pay upon reallocation was $1,553 — the 5th step. At this point, appellant’s true rate of pay exceeded her “red circle” rate.
Under Civil Service Rule 6.15(a), appellant became eligible for a step increase on June 15, 1984, which would have increased her salary to $1,615 — the 6th step. Therefore, appellant’s highest permissible rate of pay as of February 15, 1985, was $1,615 per month. For the foregoing reasons, the Commission concludes that appellant was indeed overpaid between October 10, 1983 (when she was being paid $1,464 per month, but should have been paid $1,443.75 per month) and February 15, 1985 (when she was being paid $1,680 per month but should have been paid $1,615 per month). The critical issue in this appeal is whether the Department of Health and Human Resources can recoup the overpayment. Article X, Section 10(A) of the Louisiana Constitution of 1974, requires the Commission to adopt a uniform pay plan and authorizes the Commission to adopt rules governing compensation. The Commission has adopted rules governing compensation, which apply to all employees in the classified service. If an error occurs resulting in a payment to an employee which is not authorized by the rules, the result is disuni-formity of pay. In this case, appellant did not cause the errors; nonetheless, she was compensated in an amount which exceed the pay to which she was entitled under the Civil Service Rules.
The Civil Service Rules do not address the issue of overpayment; Civil Service Rule *771 15.3(b), requiring reporting of pay changes and approval thereof by the Director of the Department of State Civil Service, was designed to prevent errors in calculating pay. In this case, apparently the personnel action form reporting the October 10, 1983 step increase was lost and for this reason, the error was not discovered until almost a year later.
Counsel for appellant argues that by paying appellant at a particular rate of pay, the Department of Health and Human Resources had entered into a contract with appellant to pay her the amount being paid and that if such a contract was subject to the suspensive condition of approval by the Director of the Department of State Civil Service, the suspensive condition is deemed fulfilled under the provisions of LSA C.C. art. 1772.
Counsel for appellee argues that this case is governed by LSA C.C. arts. 2301 and 2302 which read as follows:
Art. 2301. Obligation to restore thing unduly received
Art. 2301. He who receives what is not due to him whether he receives it through error or knowingly, obliges himself to restore it to him from whom he has unduly received it.
Art. 2302. Right to reclaim thing unduly paid
Art. 2302. He who has paid through mistake, believing himself a debtor, may reclaim what he has paid.
The establishment of a rate of pay for a state classified employee is not governed by the general law governing contracts, but rather by the specific law governing state classified employees — Article X, Part I of the Constitution and the rules adopted pursuant thereto, which have the force and effect of law. La. Const. Art. X, Sec. 10(A)(1). In this case, had the Department of Health and Human Resources and appellant entered into the type of contract suggested by counsel for appellant, such a contract would have been in direct contravention of the Civil Service Rules on the subject.
The Commission concludes that, in order to preserve the uniform application of the pay plan, the Department of Health and Human Resources is under a duty to recoup from appellant the salary she was paid to which she was not entitled. Further, the Commission concludes that articles 2301 and 2302 of the Louisiana Civil Code are applicable hereto because there are no specific Civil Service Rules on the subject of recoupment. Recognizing that the overpayment was through no fault of appellant and that recoupment will cause a financial hardship on any employee, the Department of Health and Human Resources is ordered to recoup the overpayment over the same period of time that the overpayment was made — sixteen months. For the foregoing reasons, this appeal is denied.
ASSIGNMENTS OF ERROR
The plaintiff assigns the following as errors on the part of the State Civil Service Commission: (1) noncompliance by the State with the Civil Service Rules for setting Bockrath’s salary as a classified employee; (2) noncompliance by the State with the Civil Service Rules for notifying Bock-rath of her “true rate” of pay; (3) arbitrary decision by the Civil Service Commission in its finding that DHHR could recoup the overpayment.
ASSIGNMENT OF ERROR NO. 1
The finding by the Civil Service Commission that Bockrath was overpaid between October 10, 1983, and February 15, 1985, was correct. Plaintiff’s contention that DHHR is estopped from alleging overpayment merely by the passage of time is without serious merit. The Civil Service Rules are promulgated to classified state employees. Although the civil service is complex, an employee should review the pay plan to assure all regulations are complied with. The reduction of Bock-rath’s salary is not without justification. The Civil Service Commission did not commit reversible error in its determination that Bockrath received an erroneous salary.
*772 ASSIGNMENT OF ERROR NO. 2
The second cited error is plaintiff’s allegation that DHHR did not duly notify Bockrath of her “true rate” of pay. Plaintiff argues that proper notice of the “true rate” is essential to the exercise of her right to challenge the rate assessed. Bock-rath contends that the lack of notice also prevented her from considering several other employment options.
It is clear that substantial rights are affected when an employee’s salary is reduced. The Civil Service Rules expressly provide that notice of appeal rights be given when a salary is decreased. Civil Service Rule 13.10(b). Smith v. Department of Health & Human Resources, Southeast Louisiana State Hospital, 461 So.2d 1243 (La.App. 1st Cir.1984), writ denied, 464 So.2d 316 (La.1985). The review procedures provided by La. Const. Art. X, § 8, furnish adequate safeguards to assure that a classified employee will not be unfairly or unduly deprived of his or her rights. Allen v. DHHR, Ruston State School, 426 So.2d 234 (La.App. 1st Cir.1983). Due process does not require a hearing prior to a reduction in pay. The appellate process within the Civil Service System, as manifested in the Civil Service Commission’s hearings, is quite adequate to give ample opportunity to plaintiff to remedy any inequities created by this clerical error. The Commission’s finding as to notice was not error.
ASSIGNMENT OF ERROR NO. 3
The final assigned error is the Civil Service Commission’s determination that DHHR has a duty to recoup the over-payments rendered to plaintiff. The Commission concluded that because Civil Service Rules do not exist on the subject of recoupment, La.Civ.Code arts. 2301 and 2302 permitted DHHR to recover the overpaid salary.
While this court recognizes DHHR’s responsibility to assure civil servants a uniform system of pay, DHHR cannot withhold Bockrath’s pay in the manner prescribed. Neither DHHR nor the Commission is empowered by the Louisiana Constitution to enforce monetary obligations. To permit an administrative agency to adjudicate the monetary obligations between employees and itself is to invoke the authority and power of the judiciary. As an employer, however, this is not to preclude DHHR from seeking a remedy via the judicial branch. Thus, the Commission did commit error in allowing DHHR to recoup the over-payment.
Therefore, the Commission is reversed as to its determination that DHHR may recoup the salary over-payment through a reduction in plaintiff’s monthly salary; and in all other respects the decision is affirmed at plaintiff-appellant’s costs.
AFFIRMED IN PART, REVERSED IN PART.