598 So.2d 545 (1992)
HOUSING AUTHORITY OF the CITY OF MORGAN CITY, Louisiana
v.
Gisele W. GIBSON.
HOUSING AUTHORITY OF the CITY OF MORGAN CITY, Louisiana
v.
Gisele W. GIBSON.
Nos. CA 91 0406, CA 91 0407.
Court of Appeal of Louisiana, First Circuit.
April 10, 1992.
Rehearing Denied May 28, 1992.
*546 Dale H. Hayes, Leonard and Hayes, Morgan City, for appellant.
Harold J. Rhodes, Morgan City, for appellee.
Robert R. Boland, Jr., Civ. Service Gen. Counsel, Dept. of State Civ. Service, Baton Rouge, for Herbert L. Sumrall, Director Dept. of State Civ. Service.
Before COVINGTON, C.J., and LeBLANC and WHIPPLE, JJ.
COVINGTON, Chief Judge.
The Housing Authority of the City of Morgan City, Louisiana, appeals from a decision of the State Civil Service Commission reinstating Gisele W. Gibson as Housing Authority Project Manager II, granting back pay, and ordering the Housing Authority (the appointing authority) to pay attorney's fees to Gibson and her attorney. For the reasons assigned below, we reverse.[1]
Gisele W. Gibson was suspended from her position by a letter dated September 29, 1989 and signed by the Chairman of the Housing Authority of the City of Morgan City, Louisiana. The letter indicated as reasons for this action an investigation into appellee's failure to repay salary overpayments and undocumented overtime, the authorization of excess salary payments to herself, her unauthorized upgrade of her position to Project Manager II, and her failure to operate the Section 8 program in accordance with programmatic guidelines, resulting in deficiencies in rent reasonableness and utility allowances and in conflicts of interest.
Gibson appealed from this suspension; on March 5, 1990, a letter signed by the Chairman of the appointing authority notified her that the Housing Authority had determined that she should be dismissed and removed from her position for "misconduct and gross inefficiency and mismanagement of her duties." Reasons were enumerated for this decision.[2]
*547 Finally, on April 5, 1990, a letter was sent to Gibson stating that she was terminated for the reasons enumerated in the March 5 letter. She appealed from this action. The appeals were consolidated, and a hearing was held on August 22, 1990, before Civil Service Commission Referee Bernice R. Pellegrin. The referee reversed the suspension and termination of Gibson and ordered her to be reinstated to her position. The referee also awarded back pay and attorney's fees in the amount of $500.00.
Appellant, the Housing Authority of the City of Morgan City, appeals Pellegrin's decision, assigning seven assignments of error. We find that assignments II, III, VI, and VII have merit and will address them generally in this opinion.[3]
We first note that to determine whether legal cause existed for disciplinary action taken against a classified employee with permanent status in state civil service, heard by an appointed referee, the Court of Appeal is required to independently review the record to determine whether the Commission's conclusion was arbitrary, capricious, or manifestly wrong. Goree v. Department of Corrections, Wade Correctional Center, 468 So.2d 829 (La.App. 1st Cir.), writ denied, 474 So.2d 1299 (La.1985).

FACTS
Gisele W. Gibson began working with the Housing Authority of Morgan City in September of 1985; she began as a Typist Clerk I. She testified that she took a test for Typist Clerk II and was promoted to that position after showing the results to Wendell Bogan, her supervisor, who advised the payroll clerk, Ruby Maize, to begin paying her at the appropriate salary. Her promotion to Project Manager II came about in the same way, according to Gibson; she took a test, brought the results in to Bogan, and was paid accordingly thereafter. Standard Form-1's in the record indicate that Ms. Gibson's promotion from Typist Clerk 1 to Typist Clerk II was effective on July 21, 1987, with a pay raise from $762.00 per month to $816.00 per month; her promotion from Typist Clerk II to Housing Authority Project Manager II[4] was effective December 30, 1988 with a salary increase from $883.00 per month to $1,309.00 per month. However, both SF-1's were not approved by the Department of Civil Service until May 12, 1989; they are dated April 4, 1989.
Upon promotion to Housing Manager II, Gibson's responsibilities included making "rent reasonableness" determinations. According to Bogan's testimony, "What you have to do is go out and pick houseslike houses or similar houses and try to make a determination of whether we are paying too much rent or too little rent based on the market value of the houses in Morgan City or in the area." She was also required to determine "utility allowances," which are paid to each qualified recipient of housing based upon percentages of power used by each residence. Gibson was also asked to assume the duties of Civil Service record keeping at an unidentified time during her tenure as Project Manager II.
On February 17, 1989, the Office of Inspector General of the United States Department of Housing and Urban Development (HUD) issued an audit report resulting from its audit of the Housing Authority of the City of Morgan City.[5] Findings were made highly critical of the operation and management of the Housing Authority, *548 and particularly, of Wendell Bogan, the Executive Director of the Housing Authority, and of Gisele W. Gibson. It was in the wake of this audit, and apparently in an attempt to comply with an express directive to terminate Ms. Gibson, that disciplinary action was taken against appellee.
In summary, the audit found that Bogan and Gibson were overpaid by $24,701.00; their salaries were to be paid from a combination of Section 8 and low-rent housing funds, but instead the entire budgeted salaries were paid from low-rent housing funds and additional amounts over budget were paid from Section 8 funds. In addition, undocumented overtime in the amount of $2,515.77 was paid. The audit further found that procurement policies were not followed, with resulting questionable payments in the amount of $8,015.00. Improper charges to the Housing Authority's credit card were made, amounting to $5,249.65. Payments amounting to $16,726.00 were made under the Section 8 program without waivers of the conflict-of-interest provisions contained in the Annual Contribution Contract.
Further, no rent reasonableness determinations were made and utility allowances were not adequate, according to the report. There were inadequate internal controls to regulate cash and other assets. Attendance and leave records were improperly maintained by Gibson, who acted as timekeeper, and improper pay increases were made. Bogan did not review attendance and leave records, and the report expressly found that Gibson was not knowledgeable of HUD and State of Louisiana Civil Service Requirements. As a result of "a lack of involvement by the Executive Director and the Board," budget overruns for the three years preceding the audit were found.
Recommendations were made to correct the deficiencies found in the audit; the most pertinent to this opinion were the request that Bogan repay the $20,910.49 he owed as a condition of further employment, and that Gibson be terminated "for refusing to repay to the Housing overpayments and undocumented overtime payments."[6] HUD further noted that Gibson's unauthorized salary payments to herself, as well as the upgrade in her position to Project Manager II, had resulted in a 54% increase in her salary over budget and that "Ms. Gibson has not administered the Section 8 program within the programmatic guidelines, and has exhibited a reluctance to comply with directives from her supervisors."[7]
Gibson's primary defense to the charges against her was that Bogan had in fact authorized her salary increases, her promotions, her payments for undocumented overtime dating from 1985 and 1986, and the additional monthly salary they were both receiving. She also testified that she was improperly trained to do the rent reasonableness determinations and to determine the utility allowances required by the job, and that she never understood how Civil Service worked and could never get proper help for the task of timekeeping and record keeping for the employees of the Housing Authority. She testified that, as to the conflict of interest allegations concerning three Morgan City public officials participating as owners in the Section 8 program, she and Bogan were both aware that there were problems.
The testimony of Jim Firmin, an architect who worked with the Housing Authority as a technical advisor and who administered the Section 8 program for St. Mary Parish, contradicted Gibson's testimony that she was not trained to do rent reasonableness and utility allowance calculations, as did that of Bogan. Both testified that Gibson attended workshops and was encouraged to call upon Firmin for help. Nonetheless, such determinations were not made correctly, according to Gibson's own testimony as well as that of Bogan. She testified that *549 she didn't have a camera to photograph the houses, although photographs were necessary to make rent reasonableness determinations; that she was also not provided the appropriate forms to make the determination; and that as to utility allowances, once Jim Firmin furnished her forms, she used them as best she could and had no knowledge of any other problem until the HUD audit. Her successor, Loretta Packwood, testified that when she took over, she found the utility allowances were being calculated, but they were done incorrectly. Rent reasonableness determinations had not been made.
As to the problems with Civil Service record keeping, Bogan testified when asked by the referee to explain how he was operating the personnel and pay system, "We were operating we thought inin accordance with procedures. We had no problem withwith Civil Service. No one had checked up. H.U.D. had been coming down. They never checked us. They never told us were doing anything wrong." He admitted that any pay change or reclassification should have his signature on it, but in the case of certain employees, "it didn't reach there." Clearly there was no supervision by Bogan of Gibson's timekeeping and record keeping procedures. Gibson testified that she had no help in record keeping, and didn't understand how Civil Service worked.
Any pay raises and promotions Gibson received were initiated by Gibson and, as no supervision was forthcoming from Bogan, such raises were paid without question and, in effect, condoned by the appointing authority. The bookkeeper, Ruby Maize, testified that such payments were verbally approved by Bogan; after the meeting in Bogan's office following receipt of Gibson's test scores for Housing Manager II, Maize changed her payroll records to reflect the new salary. Bogan never approved anything in writing. Gibson signed Bogan's name to all pay raise authorizations, both for herself and for her employees for whose records she was responsible. Bogan testified that she was not authorized to sign his name.
Bogan testified concerning the overtime payments that he had documentation when he signed the checks, but he didn't know what had happened to it; "it could have been thrown away or hid or whatever." Overtime payments were made to him as well as to Gibson.
Concerning her failure to repay the overpayments amounting to $6,480.00, Gibson testified that "the extra $200 that was being paid to me in addition to the salary was money that had been paid prior to me taking this program. The persons working the program had received this money before. And then when it came time for the audit was thenwhen it was said that I should have to pay this money back personally." She continued to refuse to repay the money even at trial. She was aware that Bogan had repaid the amounts paid to him from the same source.

LAW
The referee found that the appointing authority failed to carry its burden of proof under La. Const. Art. X, § 8(A), as to "a," "d," "e" and "f" of the March 5, 1990 notice of termination. These items concern the unauthorized salary overpayments, the failure to follow HUD guidelines for Section 8 management, the failure to administer Civil Service records properly, and the unbudgeted salary increases for employees. The referee found that, as concerned the failure of appellee to repay the "overpayment" of salary of $200 per month, the appointing authority could not demand such repayment without a legal right to do so, and that under Bockrath v. Department of Health and Human Resources, 506 So.2d 766 (La.App. 1st Cir.1987) the appointing authority is not empowered to enforce money obligations other than through the judicial branch of government.
We disagree with the referee's finding that the Housing Authority failed to carry its burden of proof. Legal cause for disciplinary action against a permanent, classified civil service employee exists whenever that employee's conduct impairs the efficiency of the public service for which he is employed, and it bears a real *550 and substantial relation to the efficient and orderly operation of the public service. Wollerson v. Department of Agriculture, 436 So.2d 1241 (La.App. 1st Cir.1983). The appointing authority bears the burden of proving that the efficiency was impaired.
Here, the referee seems to hold that because there was a pervasive pattern of inefficiency at the very least and corruption at the worst in the Housing Authority's management, Gibson should not be held accountable for the sins of her supervisors. In her factual findings, the referee found that "The evidence fails to establish that appellant intentionally or willfully ignored the responsibilities of her position but rather indicates that she was inadequately trained and that she was dependent upon Mr. Bogan to provide information and assistance, which was not forthcoming, accurate or adequate."
Here, however, it is clear that Gibson's behavior impaired the efficiency of the public service by which she was employed. There was no evidence in rebuttal of the HUD findings, which we accept as fact that for three years, the mismanagement of the Housing Authority office resulted in budget overruns. At least part of those budget overruns are attributable to overpayments made to Gibson, and by Gibson to her employees. Gibson's failure to properly maintain Civil Service records cannot be laid entirely at Bogan's door, nor can her failure to properly perform her duties of rent reasonableness and utility allowance determinations. The $16,726.00 in unauthorized payments to city officials without appropriate conflict-of-interest waivers likewise cannot be blamed entirely on Bogan. The fact that an infraction is condoned in the past, or even in the present, does not mean that it cannot give rise to disciplinary action. Goree v. Department of Corrections, Wade Correctional Center, supra.
We further do not agree that Bockrath prohibits a finding of legal cause for termination for appellee's refusal to return the "excess" payments she and Bogan were receiving, at the government's expense. First of all, sufficient legal cause for termination exists apart from Gibson's failure to repay the money, although that may have been the catalyst which prompted disciplining by the Housing Authority. Second, Bockrath stands only for the proposition that the money cannot be withheld from her paycheck without a legal demand through the judicial system, such as garnishment; Bockrath does not hold that an employer is not entitled to demand money, wrongfully acquired, from an employee. In Bockrath, the employee was paid incorrectly and the appointing authority attempted to withhold the sums from her paycheck. In the present case, Gibson may not have received the money intentionally, but she is certainly retaining it wilfully; such behavior amounts to insubordination, which in itself is legal cause for termination. By its very nature, the refusal to obey a direct order impairs the efficient operation of a public service. See, Wells v. Department of Public Safety and Corrections, 498 So.2d 266 (La.App. 1st Cir.1986).
We believe that the decision of the Commission is manifestly wrong based on this record, and accordingly reverse. Since we do not believe that appellant's actions in disciplining Gibson were unreasonable, as the Commission found, we hereby reverse the referee's award of attorneys' fees to Gibson and her counsel.
REVERSED.
NOTES
[1] Appellant has filed a motion to dismiss as moot appellee's appeal for reinstatement to employment, on the grounds that Gibson failed to return to work timely after the ruling below that she was entitled to reinstatement, and was terminated from her position for abandonment. Appellee has not appealed from the decision of the Civil Service Commission, and appellant in effect is moving to dismiss its own appeal as moot. This matter came up post-judgment, and there is no evidence in the record from which we can rule. Accordingly, we do not consider this motion.
[2] The letter outlined, in "a" through "f", the following items:

(a) Ms. Gibson's unauthorized pay increases resulting from unapproved promotions, totaling $7,645.00; (b) her salary overpayments in an amount of $6,480.00, which after demand for repayment, Gibson had refused to repay; (c) her overtime payments in the amount of $1,102.50, which were likewise unauthorized; (d) her failure to follow Section 8 program guidelines, resulting in payments made to individuals without conflict of interest waivers as required by HUD, failure to make rent reasonableness determinations as required by HUD, and failure to determine utility allowances as required by HUD; (e) her failure to properly administer Civil Service records of employees, one of her job requirements; and (f) her improper authorization of unbudgeted salary increases for employees.
[3] In Assignment of Error II, appellant urges that the Commission erred in reinstating appellee when she admitted that she forged her supervisor's signature on forms granting herself promotions and retroactive pay raises; in III, appellant argues that it was error to reinstate Gibson when she was found by HUD to have been overpaid by $6,480.00, admitted the overpayment, but refused to repay it; in VI, appellant protests the awarding of attorney's fees to appellee; and in VII, appellant urges error in reinstating Gibson contrary to proof that she was grossly negligent in the performance of her duties.
[4] The position is variously denoted "II" or "2" throughout the record. For the sake of consistency, we will use roman numerals throughout this opinion.
[5] The audit was conducted on October 13, 1988, and included a cash accountability analysis for the period from July 1, 1988 through October 13, 1988.
[6] Bogan did in fact repay the amount overpaid to him.
[7] We quote from a letter dated September 15, 1989, to Reverend C.F. Smith, Chairman of the Board of Commissioners of the Morgan City Housing Authority, from the U.S. Department of Housing and Urban Development, signed by Richard J. Franco, Manager.