JgFITZSIMMONS, J.
Plaintiff, Wallace Ben, appeals the Civil Service Commission’s reinstatement of his termination by the employer-defendant, the Housing Authority of New Orleans (HANO). We affirm.

FACTS AND PROCEDURAL BACKGROUND

Mr. Ben was a civil service employee with permanent status. HANO notified Mr. Ben that he was being terminated from his position as a police officer for insubordination and threatening his superior officer with a gun. Mr. Ben appealed his dismissal, and the matter was heard by a referee appointed by the Civil Service Commission (commission). The referee found that Mr. Ben was insubordinate when he twice refused to follow a direct order from a superior officer; and, after the refusals, engaged in a heated exchange with his superior. However, the referee did not find that the acts of insubordination merited dismissal of an officer with no prior disciplinary action during his almost three years with HANO. In place of the termination, the referee imposed a thirty-day suspension.
HANO applied to the commission for a rehearing. After a review of the record and transcript, the commission found as follows:
On the day of the events in question, another subordinate police officer called [stating] that he would not be able to assume his post, and appellant’s lieutenant called for ..., the appellant [Mr. Ben], to come to a housing project to assume the post of the absent police officer. The lieutenant, himself, proceeded to this post and parked inside the fence surrounding the housing project to await the arrival of the appellant [Mr. Ben], The appellant finally arrived, but the lieutenant felt that an inordinate amount of time had been spent by the appellant in getting to his new post. The lieutenant was aware that part of the delay was caused by the inability to contact the appellant by radio, but the lieutenant testified he also suspected the appellant had not come directly to the location of this new post. The lieutenant’s suspicions were fueled by the fact that the appellant did not come into the gate of the housing project, but parked on the median of the roadway that ran beside the project. In addition, the lieutenant’s uncontradicted testimony was that he had verbally reprimanded the appellant in the past for not traveling directly from one post to another, but, instead, obtaining a meal in the course of the traveling. In this case, the appellant admitted that he had, in fact, *805 | .-¡stopped by an “eatery” to obtain a meal which he had with him in the HANO vehicle parked in the median.
The appellant[Mr. Ben] remained in the HANO police unit in which he had arrived and had parked on the median. It is not clear whether he saw the approach of the lieutenant from the lieutenant’s own police unit. Whatever the case, both the appellant and the -lieutenant agree that when the lieutenant arrived at the driver’s side window of appellant’s unit the appellant saw the lieutenant standing outside the closed window, but did not lower the window until asked to do so by the lieutenant. Both the appellant and the lieutenant agree that conversation then ensued about the inability of the appellant to have been contacted by radio at his previous post, and that the lieutehant asked the appellant to hand him the radio the appellant stated he had in his possession and that was located between the two seats of the HANO vehicle. It is further agreed that the appellant refused to give the radio to his lieutenant, and it is also agreed that further communication ensued between the two about this refusal and culminated in the appellant stating to the lieutenant to “get up off me,” and the appellant’s opening of the vehicle’s door and his partial exit from that door in the direction of his lieutenant. What stopped the appellant’s exit was the slippage of his service pistol from his lap. The appellant caught the falling pistol in his hand and the. lieutenant backed away with a mollifying statement or statements. The lieutenant testified he believed he was being assaulted by the appellant. The appellant then re-entered the vehicle, closed the •door, and put the pistol -in its holster. How the pistol came to be in the appellant’s lap and not in its holster is explained by the appellant. The appellant states that he habitually would, remove his service pistol from its holster and place it in his lap while at a post in order for the pistol to be more readily accessible. His lieutenant and Chief of Police, however, testified that the appellant knew or should have known that while a police officer is on duty, the service pistol should be removed from the holster only to defend life. This conflict, however, need not be resolved as the appellant was not charged by his appointing authority with any fault in removing- the pistol from the holster, and, in fact, the pistol was in the appellant’s lap. •
We readily conclude that the appellant was guilty of gross insubordination in failing to follow the directive of his lieutenant that the radio be given to the lieutenant by the appellant. It was a reasonable directive related to the performance of appellant’s duties, but was intentionally disobeyed by the appellant. The appellant states that he refused to turn over the radio because it was located in such a position that when he moved to pick it up the pistol on his lap would have been exposed to the view of the lieutenant. He states that he did not want the lieutenant to see the pistol because he felt that the lieutenant would then accuse him of pointing the pistol at the lieutenant. We do not consider this as mitigation. The directive given to the appellant was clear, related to police work, and had to be obeyed. The refusal to obey the directive constituted willful, gross insubordination by the appellant.
Upon suffering the insubordination, it might have been a proper course for the lieutenant to remove himself from the area, seek a | replacement for the appellant, and to begin the proceedings to *806 terminate the appellant. An equally proper course, however, was for [him], as a lieutenant of police, to berate his subordinate officer for the insubordination. Whatever its level, the appellant testified that some communication occurred before he exited the vehicle thereby exposing his pistol and causing his lieutenant to believe he was being assaulted. There are two conclusions that can readily be drawn from the appellant’s actions at this point. The first is that the proffered excuse for the insubordination in refusing to turn over the radio had no validity as the appellant readily and voluntarily abandoned the hiding of the gun. The second is that the appellant was escalating his insubordination by moving from the vehicle towards his lieutenant in a threatening manner and under' circumstances that caused him to actually forget about the pistol in his lap. It was the Referee’s conclusion that at this point the appellant was angry with his lieutenant, and the record and transcript readily support this conclusion.
Cause for appellant’s termination from his position as a police officer was shown by his intentional insubordination to his lieutenant in refusing to hand over his radio. The resulting sequence of events is the natural result of such insubordination at the hands of a police officer who has no respect for authority and the actions of appellant in those events constitute an extension of the original insubordination. The appellant has proven himself to be a police officer with little or no respect for authority. The police forces of our society are subject to various levels of control from an immediate^ 'supervisor through to the highest court of our society. These police forces have a great deal of power and authority that may be applied immediately upon the members of society they seek to police. Because of this, respect for these levels of authority is critical to the maintenance of an effective, efficient, and trustworthy police force.... While the HANO police force is not a true military society, it certainly is a quasi-military unit and the minimal conduct demanded of its members is respect for and obedience to higher authority. The appellant has proven himself unwilling or unable to conform to this basic standard for a police officer.
For these reasons, the commission reversed the referee’s decision, and reinstated the termination of Mr. Ben by HANO. In response, Mr. Ben appealed to this court. In his appeal, Mr. Ben asserts that his dismissal was not an appropriate discipline for his infraction and the commission’s decision was arbitrary and capricious.
| ^APPLICABLE LEGAL PRECEPTS
Louisiana Civil Service Rules 13.36(f)3 and 5 provide that the commission may modify or reverse a referee’s decision on an issue of law; and, after a review of the recording or transcript of the hearing before the referee, modify or reverse on an issue of fact. See also La. Const, art. 10, § 12(A). The final decision of the commission is subject to review by the court of appeal on any question of law or fact. La. Const, art. 10, § 12(A). The appellate court should not disturb the commission’s factual findings in the absence of manifest error. Decisions regarding cause for dismissal should not be reversed unless the decision was arbitrary, capricious, or an abuse of the commission’s discretion. Walters v. Department of Police of New Orleans, 454 So.2d 106, 113 (La.1984).
A permanent classified civil service employee cannot be disciplined without cause. La. Const, art. 10, § 8. Cause *807 exists whenever the employee’s conduct is detrimental to the efficient and orderly operation of the public service that employed him. Burst v. Board of Commissioners, Port of New Orleans, 93-2069, p. 5 (La.App. 1 Cir. 10/7/94), 646 So.2d 955, 958, writ not considered, 95-0265 (La.3/24/95), 651 So.2d 284. By its very nature, the refusal to obey a direct ordef impairs the efficient operation of a public service. Housing Authority of Morgan City v. Gibson, 598 So.2d 545, 550 (La.App. 1 Cir.), writ denied, 604 So.2d 1000 (La.1992). This is particularly true if the employment is in a quasi-military capacity, such as a police officer. See Malone v. Department of Corrections, Louisiana Training Institution-Ball, 468 So.2d 839, 841 (La.App. 1 Cir.1985). One specific act of willful disobedience or insubordination may be sufficient legal cause for termination. See Thomas v. Department of Corrections, Office of Probation and Parole, 442 So.2d 554 (La.App. 1 Cir.1983).
| fiAfter a thorough review of the record, we cannot say that the findings of fact by the commission were manifestly wrong. The record here provides a reasonable basis for finding that (1) Mr. Ben, while on duty guarding a project that he believed was in a dangerous area, specifically refused to obey a superior’s direct order, (2) Mr. Ben, during the confrontation, became visibly angry toward his superior and used inappropriate and disrespectful language, and (3) the gross insubordination impaired the efficient and orderly operation of the HANO police service. The facts as found by the commission evince more than a single act of serious and material insubordination by a police officer while on duty. Mr. Ben’s excuse for reporting late was an inoperable radio. Whether the radio was working, a question concerning an obviously important means of communication between officers on duty, was a legitimate concern. Mr. Ben’s refusal to obey such a legal, direct order cannot be excused by his fear that he would be reprimanded for a possible misunderstanding involving the un-holstered gun. Nor can his apparent anger at being asked to turn over the radio excuse the disrespectful words and actions. Certainly, reasonable minds might differ on whether termination was the only possible discipline. However, we cannot conclude that the commission’s analysis of the seriousness of gross insubordination in a quasi-military organization, and the commission’s resulting decision under these particular facts, were arbitrary or capricious exercises of its authority.
For these reasons, we affirm. The costs of the appeal are assessed to Mr. Ben.
AFFIRMED.