h GASKINS, J.
The defendants, Goldstream Corporation, Jerry L. Whitton, Gerald D. Whitton, and Bobby G. Whitton, appeal a trial court judgment ordering them to pay $43,548.30 to the plaintiff, Wooldridge Production Company, Ltd., and rejecting the defendants’ claims against the plaintiff.[1] For *1213 the following reasons, we amend, and as amended, affirm the trial court judgment.
FACTS
Goldstream Corporation (Goldstream) is operated by Jerry L. Whitton, Gerald D. “Doug” Whitton, and Bobby G. Whitton. Wooldridge Production Company, Ltd. (Wooldridge) is operated almost exclusively by Mark Wooldridge, although his brother, Maury Wooldridge, previously worked in the business. This case is a suit on open account by Wooldridge and involves a dispute over the terms of an agreement between the parties.
In 1996, Goldstream had oilfield equipment that was not being used in south Louisiana, including a Bowen power swivel, triplex pump, Cameron QRC blow-out preventer, Wheatley plunger pump, two small tanks, two pipe threaders, two pumping units, a power tong, air slips, Martin Decker weights, a Ford engine, and a big rig tank. Also, at some point, Goldstream owned a 1977 Wilson 42 B rig. Goldstream enlisted the aid of Wooldridge in going to south Louisiana, bringing the equipment back to Wooldridge’s facility in Caddo Parish, and refurbishing it.
1 ?The parties agreed that the plaintiff would refurbish the equipment, would use or rent it, and would retain the revenue until the cost of repairs was recovered. Then Wooldridge would receive half the income from the equipment and Gold-stream would be entitled to the remainder. At this point, the agreement was not reduced to writing. Wooldridge claimed that invoices for the repair work were periodically furnished to Goldstream. The defendants asserted that they did not receive invoices regarding the cost of repairs.
The power swivel and triplex pump were refurbished and were used to some extent by Wooldridge. Other items were not repaired. Two small tanks were not salvageable and were cut up for scrap. As the work progressed, the dispute over the terms of the agreement surfaced. At one point, Goldstream submitted a letter to Wooldridge, purporting to set forth the terms of the agreement. This letter was not signed by the plaintiff.
In January 1997, Goldstream presented Wooldridge with another letter, providing for Wooldridge’s recovery of out-of-pocket costs for the repair of the equipment by the use of it in the plaintiffs well servicing business. According to the letter, any repairs of the equipment after reconditioning would be the responsibility of Wooldridge. Wooldridge was given the right of first refusal on purchasing the equipment. Wooldridge would be required to provide Goldstream with a total cost for the initial repair and reconditioning and to provide payout status on a monthly basis. Wool-dridge would be obligated to carry insurance on the rig and related equipment. According to Goldstream, after making some modifications, |aMark Wooldridge signed the agreement, but failed to furnish a signed copy to Goldstream. Mr. Wool-dridge claimed that he did not agree to pay for repairs to the equipment after the initial refurbishing and did not agree to maintain insurance on it. Mr. Wooldridge denied signing the letter and stated that he could not find a copy of it in his files.
In October 1997, Goldstream wrote Wooldridge that it did not have a signed agreement or payout status and informed Wooldridge that it had five days from the date of the letter to exercise the right of first refusal to purchase the equipment. The parties were able to come to an agreement whereby Wooldridge purchased the 1977 Wilson 42-B rig for “$45,000, less liens of $13,042.13.”
On January 22, 1998, a demand letter was sent by Wooldridge to the defendants requesting payment for the expenses of retrieving and refurbishing the equipment. *1214 The defendants responded, denying the amount owed and claiming entitlement to additional credits. The defendants also offered to sell the equipment to Wool-dridge, but the plaintiff declined.
On February 6, 1998, Jerry Whitton and Gerald Whitton sent demand letters to the plaintiff for payment of compressor and pump rentals and for engineering and supervision services. The invoices supporting these charges were later shown to have been fabricated by the defendants.
The present lawsuit was filed by Wool-dridge on February 12, 1998 for a money judgment, to recognize a privilege and for a writ of sequestration. Wooldridge alleged that beginning in November 1996, it provided goods and services to the defendants to repair equipment. | ¿Wooldridge claimed that Goldstream owed $88,000.46 on open account and sought to have its repairman’s lien recognized under La. R.S. 9:4502. It asked for a writ of sequestration on the equipment without the necessity of furnishing security. The writ of sequestration was granted on February 17, 1998.
Goldstream answered, denying that it owed anything to Wooldridge, and claiming that the charges were wrongfully incurred. In its reconventional demand, Goldstream sought credit for use of the equipment by the plaintiff. Goldstream asserted that on October 25, 1997, Wool-dridge agreed to buy Goldstream’s 1977 Wilson 42 B rig and the agreement provided for a credit to the defendants of $13,042.13. Goldstream sought recognition of that credit.
Goldstream attached the fabricated invoices for use of equipment and services, claiming that Wooldridge owed the defendants significant sums of money. Gold-stream had filed petitions in Caddo and Claiborne Parishes to enforce material-man’s liens against Wooldridge, to recover for services, materials, and supplies allegedly provided by Goldstream to Wool-dridge pursuant to these invoices. These petitions were filed by the defendants without the assistance of counsel. In its pleadings in the present suit, Goldstream sought recognition of its liens against some of the plaintiffs leases to secure payment of these alleged debts. Goldstream further claimed that Wooldridge’s writ of sequestration was wrongfully granted.
Wooldridge then amended its petition to add Jerry L. Whitton, Gerald D. Whitton, and Bobby G. Whitton as defendants, in solido, with IsGoldstream. Wooldridge claimed that the invoices for compressor and pump rental and for supervision and engineering expenses were fictitious and were manufactured by the defendants in retaliation for the filing of this lawsuit by the plaintiff. Wooldridge sought to have the defendants’ liens dissolved. A new writ of sequestration was granted to the plaintiff on April 22, 1998, with a bond of $27,666.66.
Trial on the matter was held on June 21, 2001 and August 21, 2001. On October 25, 2001, the trial court issued a written ruling. The court found that there was an enforceable agreement between the parties for Wooldridge to retrieve and refurbish the defendants’ equipment from south Louisiana. The court concluded that the defendants owed Wooldridge $43,548.30.[2] The court ruled that there was no credible evidence to support the defendants’ claim that it was entitled to any additional credit for Wooldridge’s use of the equipment. The court rejected the testimony of several *1215 witnesses presented by the defendants as biased, finding that the witnesses were impeached. These witnesses were offered to support the claim that the equipment had been used extensively by Wooldridge without granting credit to the defendants. The defendants’ other witnesses on the issue of use of the equipment either lacked specific knowledge or testified that Wool-dridge used equipment other than Gold-stream’s.
The court found insufficient evidence to conclude that Wooldridge had a one-half ownership interest in the equipment or a right of first refusal. |fi The court recognized that Wooldridge had a privilege on the property under La. R.S. 9:4502 and La. C.C. art. 3217. It also held that the defendants did not have a valid claim for loss of use of the equipment. Wooldridge was given the right to retain possession of the equipment until the judgment is paid by the defendants.
The court found that there was no agreement requiring the defendants to pay storage fees and found that the invoices generated by the defendants were unfounded. All liens filed by the defendants against Wooldridge were ordered to be cancelled.
On November 5, 2001, the trial court filed a judgment in favor of Wooldridge and against the defendants, in accordance with its written ruling. The defendants’ reconventional demand was dismissed. The court rejected the defendants’ claims against Wooldridge and dismissed with prejudice all causes of action filed by the defendants in the present suit, in another suit filed in Caddo Parish, and in two suits filed in Claiborne Parish.[3]
The defendants appealed the trial court judgment. They claim that the trial court erred in finding that they are indebted to Wooldridge for $43,548.30, in failing to allow them appropriate credit as deductions from any sums owed to Wooldridge, and in enforcing Wooldridge’s lien against the equipment.
There is no dispute that the parties had an oral agreement for the plaintiff to retrieve and repair equipment belonging to the defendants. The 17plaintiff was to recover its costs by using the equipment in its well servicing business. The present dispute concerns the amount owed by the defendants and the amount of credit attributable to the defendants. Resolution of this dispute rests upon credibility determinations made by the trial court.
PROOF OF THE DEBT
The defendants contend that the evidence was not sufficient to show that they were indebted to Wooldridge for $43,548.30. The defendants argue that the plaintiffs invoices were vague and unsubstantiated and that the trial court erred in accepting the testimony of Mr. Wooldridge while rejecting the testimony of the defendants’ witnesses on this issue. These arguments are without merit.
Legal Principles
An appellate court may not set aside a trial court’s or a jury’s finding of fact in the absence of “manifest error” or unless it is “clearly wrong.” Stobart v. State through Department of Transportation and Development, 617 So.2d 880 (La.1993).
A reviewing court must do more than simply review the record for evidence which supports or controverts the trial court’s findings. It must review the record in its entirety to determine whether the trial court’s findings were clearly wrong or manifestly erroneous. Also, the reviewing court must ascertain whether *1216 the fact finder’s conclusions were reasonable. Even when an appellate court may feel that its own evaluations are more reasonable than the fact finder’s, reasonable determinations and inferences of fact should not be disturbed. Porter v. Porter, 36,007 (La.App.2d Cir.6/12/02),8 821 So.2d 663. Where there are two permissible views of evidence, the fact finder’s choice between them cannot be manifestly erroneous or clearly wrong. Stobart v. State through Department of Transportation and Development, supra.
Invoices
The defendants argue that the invoices submitted by the plaintiff in support of its claim are vague and unsubstantiated. They contend that, because the trial court rejected Wooldridge’s claim for storage fees and granted a credit to the defendants on the sale of the rig, it did not totally accept the plaintiffs billing.
Nona Broome, a secretary at Wool-dridge, stated that she prepared invoices and credit memos to be sent to the defendants and that these were conveyed to them in the normal course of business. The defendants were billed for parts and services obtained from other companies and used to repair the defendants’ equipment. These charges were corroborated by bills from the other companies. Ms. Broome stated that Mark Wooldridge informed her of the amounts to bill for labor and services rendered by Wooldridge, as well as the credits to be allowed. She stated that invoices would be either mailed to customers, given to them by Mr. Wool-dridge, or picked up by the customers when they were in Wooldridge’s office. Ms. Broome testified that there is no reason to think that the invoices in this case were not conveyed to the defendants as they were being generated. The invoices and supporting bills were filed into evidence.
| ¡¡Mr. Wooldridge testified concerning the repairs made to the defendants’ equipment and the costs incurred. He also pointed out that several pieces of equipment had not yet been repaired. Mr. Wooldridge stated that he and Doug Whit-ton went over the invoices weekly. According to Mr. Wooldridge, he thought the invoices were also mailed to the defendants. Mr. Wooldridge testified that he thought his company acquired a partial ownership interest in the equipment, but when he could not get any documentation from the defendants to that effect, he began filing liens against the equipment.
Jerry Whitton testified, denying that he received any invoices from the plaintiff before the plaintiffs lawsuit was filed. He then admitted that the invoices were included with the plaintifPs demand letter, which was received at least one month before the present suit was filed. Doug Whitton testified that most of the time, he was kept apprised of what was being done to repair the equipment.
The record shows that the plaintiff adequately supported its claim for debts owed by and credits due to the defendants. The trial court’s rejection of Wooldridge’s claim for storage fees and its grant of credit arising from the sale of the rig has no bearing on the plaintiffs proof of the debt owed by the defendants. The defendants’ argument that the invoices were vague and unsubstantiated is not supported by the record. Further, the plaintiff showed that the defendants were aware of the charges and credits as they were incurred.
lu)Mr. Wooldridge’s Credibility
In support of their claim that they did not owe anything to Wooldridge, the defendants argue that the trial court should not have accepted the testimony of Mark Wooldridge as credible. The defendants cite numerous factors they claim support this contention. The first factor is *1217 the number of witnesses the defendants presented who testified that Goldstream’s equipment was used extensively without credit being given to the defendants.
Eric Weiss and Keith Burton were oil producers who used the plaintiffs services. They testified that power swivels, tanks and pumps were used on their wells by the plaintiff, but they could not identify the equipment as belonging to the defendants. Mr. Burton testified that he rented a power swivel from Wooldridge and was incorrectly billed for a rotary table. However, he could not state that the power swivel used on his well belonged to Goldstream.
. Arthur Thomas, a mechanic who worked on equipment for the plaintiff, testified that he did not know of the plaintiff having access to a triplex pump or power swivel prior to gaining possession of those owned by Goldstream. However, he also stated that he really did not know what equipment the plaintiff had.
The defendants presented the testimony of Thomas Lynn Paddy, Jr., David Angle, Jeremy H. Gibson, and John Wood in support of their position. These witnesses, who were former employees of Wool-dridge, testified that Goldstream’s power swivel, triplex pump and tanks were used Inby the plaintiff on numerous jobs not reflected on the credits allowed to the defendants. However, the witnesses were shown to have left the employ of Wool-dridge on bad terms.
Mr. Paddy testified concerning the extensive use by Wooldridge of Goldstream’s equipment. He testified that the Wool-dridges did not have access to a pump or power swivel other than those belonging to Goldstream. He was then shown photographs of other pumps and power swivels owned by Wooldridge and admitted that the plaintiff must have had equipment other than that belonging to Goldstream. Mr. Paddy admitted that he owed the Wool-dridges money for past due rent on a trailer he lived in and that he did not like Mark Wooldridge.
Mr. Angle and Mr. Gibson also testified that Goldstream’s equipment was used by Wooldridge and that the defendants were not given credit for its use. Mr. Angle admitted that he owed the Wooldridges past due rent on a trailer and that he no longer worked for' Wooldridge. Mr. Gibson denied owing rent to Mr. Wooldridge.
Mr. Wood testified that the Wooldridges disabled and concealed some of the defendants’ equipment. Mr. Wood was questioned about ill feelings toward the plaintiff and the Wooldridge brothers because his father was injured while working for the plaintiff.
Robert Dean “Paco” Lewis testified on behalf of the plaintiff that he tape recorded conversations with Mr. Angle, Mr. Gibson, and Mr. Wood. Mr. Angle and Mr. Gibson told Mr. Lewis that the defendants paid them to sign affidavits in support of the defendants’ claims in this suit.- Mr. Angle ligand Mr. Gibson denied the comments contained on the tape recording. Mr. Angle later admitted that he may have made the statements while intoxicated. The tapes and transcripts of their contents were admitted into evidence.
Mr. Wood also denied the tape recorded comments. Mr. Lewis recorded a conversation with Mr. Wood in which he described an altercation with Maury Wooldridge. Mr. Wood said that he contemplated gutting Maury with a knife and spraying motor cleaner in his face. He stated on the tape that he considered sabotaging one of the plaintiffs leases in Haynesville, Louisiana. .
The record supports the trial court’s finding that the defendants’ witnesses, who were offered to support. their claim for additional credits for the use of their equipment, were biased and were im *1218 peached. The trial court was not manifestly erroneous or clearly wrong in rejecting the testimony of these witnesses.
The defendants argue numerous other factors bearing on the credibility of Mr. Wooldridge. They point out that the trial court did not accept his claim that he owned a half interest in the equipment. Mr. Wooldridge presented no evidence in support of this claim, other than his own testimony, and the trial court did not abuse its discretion in rejecting it. However, the trial court was not required to discount the remainder of Mr. Wool-dridge’s testimony, which it found to be credible.
The defendants assert that there was no evidence that the plaintiffs invoices were conveyed before the lawsuit was filed. As discussed above, |13the record shows that Goldstream was periodically billed for the work done by the plaintiff, was credited for the use of the equipment, and the defendants were kept informed of the charges and credits.
The defendants next contend that Mr. Wooldridge admitted incorrectly billing some equipment as a rotary table instead of as a power swivel, thus denying the defendants a credit for use of its equipment. As shown above in the testimony of Keith Burton, it was not established that the power swivel used on his job belonged to Goldstream.
The defendants claim that the plaintiff did not allow an audit of its records. The record in this case shows that the defendants requested the audit prior to the filing of this suit. The plaintiffs counsel indicated that an audit would not be appropriate at that point, but might later be conducted pursuant to discovery after the filing of suit.
The defendants insist that Wooldridge changed his testimony at trial to say that he did not sign a letter of conditions whereas in his deposition, he said that he did sign it. At trial, Mr. Wooldridge testified that he could not remember if he signed the letter.
The trial court did not err in finding that the plaintiff supported its claim against the defendants. The trial court also acted within its discretion in finding the testimony of Mr. Wooldridge to be credible and in rejecting the testimony of the defendants’ witnesses. The trial court was not manifestly erroneous or clearly wrong in concluding that the plaintiff proved its claim against the defendants.
luCREDITS
The defendants claim that the trial court failed to allow appropriate credits as deductions from sums owed to Wooldridge. The defendants contend that it proved entitlement to credits of $67,400.00.
According to the defendants, the evidence showed that their equipment was used by the plaintiff beginning on or about February 12, 1997. The defendants cite the testimony of its witnesses that Gold-stream’s equipment was used without credit to the defendants. However, the trial court found that the witnesses presented by the defendants were biased, were impeached, or simply could not testify that the equipment used belonged to Goldstream.
The defendants assert that Mr. Wooldridge acknowledged that credits were due for the large and small tanks that were cut up and sold for scrap for $30.00 to $40.00, that Wooldridge used the power swivel a couple of times, and that Wooldridge used the power swivel on a job in south Louisiana for at least one week. The record shows that the defendants were credited for the use of the power swivel for two days. Regarding the week of use in south Louisiana, there is no showing that the equipment used belonged to Goldstream. However, it appears that *1219 the defendants are entitled to a credit for the two tanks which were cut up and sold for scrap. The judgment is amended to allow the defendants a $40.00 credit for the tanks.
The defendants claim that they should get credit for Wooldridge’s use of a bobcat and compressor. Mr. Wooldridge stated that Goldstream fallowed Wooldridge to use the bobcat and compressor free of charge due to trouble getting the defendants to pay other debts unrelated to this ease. There was no showing that the parties agreed that the plaintiff would pay for the use of these items.
Other than the allowance for the two tanks discussed above, the numerous credits claimed by the defendants are simply not supported by the record. Regarding the other credits claimed by the defendants, we find that the trial court did not err in refusing to allow additional credits to the defendants against their debt to Wooldridge.
WRIT OF SEQUESTRATION
The defendants assert that the trial court erred in denying its request to dissolve the writ of sequestration, thereby enforcing what the defendants term an “invalid and unenforceable lien.” The defendants contend that Wooldridge’s writ of sequestration should have been dissolved for failure to post a bond or security as required by the court. The defendants also argue that Wooldridge has not had the uninterrupted possession of the equipment as required by La. R.S. 9:4502. The defendants note that Wooldridge destroyed or disabled some of the equipment without permission. According to the defendants, under La. C.C.P. art. 3506, they are entitled to damages and attorney fees for dissolution of the writ of sequestration.[4] |1fi They seek to have this matter remanded to the trial court for a determination of appropriate damages and attorney fees. These arguments are without merit.
Failure to Furnish Security
As found by the trial court, Wool-dridge exercised its right to a repairman’s privilege regarding the equipment under La. R.S. 9:4502 and La. C.C. art. 3217. La. R.S. 9:4502 provides in pertinent part:
A. (1) Any person engaged in the making or repairing of movable goods, ... equipment, ... machinery, or movable objects or movable property of any type or description, has a privilege on the thing for the debt due him for materials furnished or labor performed. This privilege is effective for a period of one hundred twenty days from the last day on which materials were furnished or labor was performed, if the thing affected by such privilege is removed from the place of business where such labor was performed or materials furnished; provided that if the thing affected by such privilege remains in the place of business of the person who furnished such materials or performed such labor, such privilege continues as long as such thing remains in such place of business.
[[Image here]]
*1220 B. This privilege may be enforced by the writ of sequestration, without the necessity of the creditor furnishing security therefor, if the debtor is first given ten days’ written notice by registered mail, and the exemptions from seizure granted by R.S. 13:3881 shall not be applicable to objects or property subject to this privilege for purposes of enforcing this privilege.
[[Image here]]
C. In addition to the remedy above granted, when the thing affected by the privilege remains in the place of business of the person having such privilege and the debt due thereon remains unpaid for more than ninety days from the date on which the last labor was performed or last material was furnished, the holder of such privilege may sell such property at private sale and without appraisement, after advertising such property for ten days as provided by law in case of judicial sales of movables....
117La. C.C. art. 3217 provides in pertinent part:
The debts which are privileged on certain movables, are the following:
[[Image here]]
2. The debt of a workman or artisan for the price of his labor, on the movable which he has repaired or made, if the thing continues still in his possession.
Pursuant to these articles, Wooldridge obtained a writ of sequestration. The first writ was granted in February 1998 and did not require security. The second writ was issued in April 1998 and required the posting of security. The defendants contend that, because the record does not show that the security was furnished, the writ should be dissolved. They contend that under La. C.C.P. art. 3501, the plaintiff was required to furnish security for the payment of damages the defendants may sustain if the writ is wrongfully obtained.[5]
We note that the defendants failed to raise in the trial court the issue of failure to post security. In their post-trial brief, the defendants argued that the writ of sequestration should be dissolved because Wooldridge wrongfully possessed the property, failed to prove its claim against the defendants, and destroyed or damaged some of the equipment. At no point did the defendants raise the issue of failure to furnish security. As a general rule, appellate courts will not consider issues raised for the first time on appeal. Geiger v. State Department of Health and Hospital, 2001-2206 (La.4/12/02), 815 So.2d 80, and cases cited therein. Accordingly, because the defendants have not previously raised this argument, it is not now properly before this court.
We further note that, under La. R.S. 9:4502, the repairman’s privilege may be enforced by a writ of sequestration without the necessity of furnishing security. Arguably, pursuant to this statute, the posting of security was not necessary in this case. However, because this issue is not properly before the court for review, we do not reach consideration of this issue.
*1221 Uninterrupted Possession
The defendants further argue that the writ of sequestration should be dissolved because the plaintiff was not in uninterrupted possession of the equipment as required by La. C.C. art. 3217. They argue that the use of the equipment on other parties’ wells interrupted the possession by the plaintiff.
The statutory privilege in La. R.S. 9:4502 is supplemental to the codal privilege granted artisans and repairman by La. C.C. art. 3217(2). Thompson v. Warmack, 231 So.2d 636 (La.App. 3d Cir.1970). To enforce the codal privilege, the repairman has the right to retain possession until paid. Unlike the statutory privilege, the code privilege requires uninterrupted possession to be enforceable. Thompson v. Warmack, supra.
In this case, the trial court found that Wooldridge was seeking to enforce both the statutory and codal privileges. As stated above, uninterrupted possession is not necessary to enforce the statutory privilege. However, under the facts of this case, even under the codal privilege, the | ^plaintiff had uninterrupted possession. The equipment, on a few limited occasions, was used on customers’ wells and they were charged for its use. In all instances, Wooldridge was in control of the equipment. We do not see that using the equipment in the manner intended by the agreement between the parties constitutes an interruption of possession.[6]
Destroying and Disabling Equipment
The defendants assert that because Wooldridge, without permission, destroyed two tanks, which were cut up for scrap metal, and disabled other pieces of equipment, the writ of sequestration should be dissolved and they should be awarded damages. The agreement between the parties was for Wooldridge to refurbish the equipment. According to Wooldridge, the two tanks were not salvageable. As discussed above, the defendants are entitled to credit for these two tanks in the amount of $40.00. However, as was demonstrated above, the defendants failed to prove that Wooldridge disabled or destroyed any other items of equipment. Therefore, on this basis, the defendants are not entitled to dissolution of the writ of sequestration and are not entitled to damages.
CONCLUSION
For the reasons stated above, we amend, and as amended, affirm the trial court judgment in favor of the plaintiff, Wool-dridge Production Company, Ltd., against the defendants, Goldstream Corporation, Jerry L. Whitton, Gerald D. Whitton, and Bobby G. Whitton. The defendants are _[a;ordered to pay the plaintiff $43,508.30 for repairs made by the plaintiff to the defendants’ equipment. In all other respects, the judgment of the trial court is affirmed. All costs in this court are assessed to the defendants.
AMENDED, AND AS AMENDED, AFFIRMED.

. As noted in the trial court judgment, the plaintiff is also known as Wooldridge Production Company, Inc., Ltd., Wooldridge Production, L.L.C., and Wooldridge Production Company, L.L.C.

. The original demand was for $83,000.46. The court found that the storage fee of $26,410.03 was not recoverable and that Goldstream was entitled to a $13,042.13 credit on the sale of the 1977 Wilson 42-B rig. Therefore, the defendants were liable to .Wool-dridge for $43,548.30.

. On June 21, 2001, the parties agreed that the trial court’s decision in this case would govern the other pending matters in Caddo and Claiborne Parishes.

. La. C.C.P. art. 3506 provides:
The defendant by contradictory motion may obtain the dissolution of a writ of attachment or of sequestration, unless the plaintiff proves the grounds upon which the writ was issued. If the writ of attachment or of sequestration is dissolved, the action shall then proceed as if no writ had been issued. The court may allow damages for the wrongful issuance of a writ of attachment or of sequestration on a motion to dissolve, or on a reconventional demand. Attorney's fees for the services rendered in connection with the dissolution of the writ may be included as an element of damages whether the writ is dissolved on motion or after trial on the merits.

. La. C.C.P. art. 3501 provides:
A writ of attachment or of sequestration shall issue only when the nature of the claim and the amount thereof, if any, and the grounds relied upon for the issuance of the writ clearly appear from specific facts shown by the petition verified by, or by the separate affidavit of, the petitioner, his counsel or agent. The applicant shall furnish security as required by law for the payment of the damages the defendant may sustain when the writ is obtained wrongfully-

. Also see and compare La. C.C. art. 3429, providing that possession may be exercised by the possessor or by another who holds the thing for him and in his name. Thus a lessor possesses through his lessee.