BROWN, Chief Judge.
|2Plaintiff, Sheena Coulberson, filed a pro se petition in Monroe City Court seeking the return of her vehicle, a 2004 Chrysler PT Cruiser, and damages for “pain and suffering” from defendant, Andy Edwards (owner of Edwards Transmission). Defendant, also acting pro se, filed a response on company stationery in the form of a “To Whom It May Concern” letter. On the two-page petition form furnished by the City Court, plaintiff admitted to having her car towed to defendant’s transmission repair shop, but she denied authorizing the actual repair of the car. Defendant did repair the transmission and, because plaintiff could not pay for those repairs, he retained possession of the vehicle. The trial court rejected defendant’s claim in which he sought payment for repairs, found in favor of plaintiff and ordered defendant to pay $1,500 in general damages and. to return plaintiffs vehicle upon her payment of an $85 towing fee. Defendant now appeals. For the reasons expressed herein, we affirm in part and reverse in part.

Facts and Procedural Background

|sOn Friday night, February 12, 2010, plaintiff, Sheena Coulberson, called the listed, after-hours phone number of Edwards Transmission, and spoke to' defendant, Andy Edwards. She responded that the gear jammed, and her PT Cruiser was unable to move. Edwards advised plaintiff that the car would have to be towed to his business and that he would look at her vehicle the next day, which was Saturday. When plaintiff called the next day she was informed that they were unable to fully inspect the ear, and to call again the following Monday. Plaintiff called on Monday and was told that they were looking at the transmission and that, at the least, it may need a new cable; plaintiff told Ed *420 wards to let her know. When plaintiff called to check on her vehicle the next day, Edwards informed her that they had finished the repairs and the total cost for the repairs was $1,962.22.[1] Upon being informed of the cost, plaintiff testified that she stated to Edwards that she never authorized him to make any repairs, and that she would not be able to pay that amount. With plaintiff unable to pay, defendant retained possession of her vehicle.
On March 5, 2010, plaintiff filed her pro se petition in Monroe City Court seeking the return of her vehicle and general damages for “pain and suffering.” Edwards filed his pro se answer, and approximately one week prior to trial counsel for defendant enrolled.
|4Trial on this matter was held on April 22, 2010. After hearing testimony from both parties and the employee of defendant who repaired the transmission, the trial court held that the repairs made by defendant were unauthorized and rejected defendant’s claim for payment. The trial court then found that upon plaintiffs payment of the $85 towing fee defendant was to return her car, and, lastly, that defendant was to pay to plaintiff general damages in the amount of $1,500.

Discussion

An appellate court may not set aside a trial court’s finding of fact in the absence of “manifest error” or unless it is “clearly wrong.” Stobart v. State, through DOTD, 617 So.2d 880 (La.1993). Even though an appellate court may feel that its own evaluations are more reasonable than the fact finder’s, reasonable determinations and inferences of fact should not be disturbed. Wooldridge Production Co., Ltd. v. Goldstream Corp., 36,373 (La.App.2d Cir.09/20/02), 827 So.2d 1211. Where there are two permissible views of the evidence, the fact finder’s choice between them cannot be manifestly erroneous or clearly wrong. Rosell v. ESCO, 549 So.2d 840 (La.1989).
The primary issue before us is whether the trial court committed manifest error in determining that plaintiff did not authorize defendant to |smake any repairs to her car. That the repairs made were necessary and the charges appropriate is not challenged.[2]
Plaintiff testified unequivocally during the trial that she never authorized defendant to make any repairs to her vehicle, much less a repair as expensive as rebuilding a transmission. According to plaintiff, the only potential repair discussed with defendant was the possibility that she may need a new shift cable. While acknowledging her eagerness to get her vehicle back and her multiple inquiries into how long it would take to repair the car, plaintiff testified that had she been informed of the costs she would not have authorized defendant to make the repairs, as she was going through bankruptcy proceedings and could not have paid that amount.
Edwards’s testimony, portions of which follow, was more equivocal:
Q: Did you tell her that you would have to uh ... it wouldn’t be a matter of just determining what was wrong with the transmission?
A: Right, I told her that we would have to pull [the transmission] out to see what was wrong with it. I mean, I *421 had already checked it myself. I didn’t know exactly what was wrong with it without looking.
Q: Did she give you permission to do that?
A: She basically said to let her know. ...
[[Image here]]
IrA: I think I spoke to her [on Monday], We had the transmission out, but it wasn’t torn down at that time. So, I didn’t have the information to give her, you know, what all was wrong with it.
Q: Did you talk to her in person that day or on the phone?
A: On the phone.
Q: Okay. Did she know at that time that you were repairing the vehicle?
A: I thought she knew. You know, whenever somebody knows that you are pulling a transmission out to completely disassemble it, to find out what was wrong with it, you are going to have to rebuild it to put it back together. You have removed the cart.
Q: Was it your understanding through all these conversations from Friday night through Monday and for that matter any conversation you had with her up until the time that she disputed the price, is it your understanding that she wanted you to repair the vehicle?
A: I was thinking about Saturday. Í didn’t know anything about Friday night because I hadn’t looked at the car. You know, I was thinking she wanted it fixed, you know, from the conversations we had.
The trial court then followed up with a few questions.
Q: What is the procedure if the person doesn’t come in? What do you do in order to obtain consent before working on the car?
A: Well, I just get a verbal. Just basically let them know what I have to do to it. You know, at that point there, do they want me to go on from there....
Q: In your earlier testimony, you said that after you told her that you would have to look at the car you said that she told you, |7“Well, let me know.” Then in your response to your questioning or questioning by counsel, you said, “Well, I thought she knew.” And you said, “I was thinking that she wanted it to be fixed.” And then you said, “If she wanted it fixed.”
A: Well, when I told her that it had to be torn down to see what was wrong with it, you know, I assumed that she knew pulling it out of the car and tearing it down is what that basically mean when you are dealing with a transmission.
Q: So, you are saying that you assumed she knew that it would be a cost?
A: I would assume that, yes ma‘am.
[[Image here]]
The trial court found from the testimony of the parties that defendant never told plaintiff what was wrong with her vehicle and/or the costs involved with repairing it prior to completion of the repairs, even though plaintiff asked to be informed. It is reasonable that someone undertaking nearly $2,000 in repairs would get consent from the owner to make the repairs, and would relay the likely cost of those repairs, as opposed to simply concluding that the owner wanted their car fixed and assuming that she would know about the cost of repair. We cannot find the trial court’s factual determination that plaintiff did not give defendant consent to repair her vehi *422 cle to be manifestly erroneous or clearly wrong.
Defendant contends that the trial court erred in awarding plaintiff damages of $1,500 for pain and suffering associated with the loss of use of | Rher vehicle when it clearly found, and the plaintiff admitted, that she owed money to the defendant and the court did not even order the return of the vehicle until payment was made.
This assignment of error pertains to the $85 towing fee that plaintiff acknowledged owing and the trial court ordered plaintiff to pay defendant prior to the release of her vehicle. It is defendant’s position that as a result of the trial court’s finding, and plaintiffs acknowledging, that a towing fee was owed, it had a legal right to retain the vehicle, and, as such, it should not have to pay damages. We agree.
The trial court held that defendant could retain plaintiffs vehicle until he received payment of the $85 towing fee, while at the same time finding him liable for damages for retaining possession of that same vehicle. These ruling are in conflict. Regardless of whether plaintiff authorized defendant to make any repairs to her vehicle, it is undisputed that she consented to the towing of the vehicle and to the time and labor spent in tearing down the transmission, i.e., for defendant to look at the transmission to see what was the problem. Yet, at no time did plaintiff make an actual legal tender of the towing fee to defendant. See Babington v. Stephens Imports, Inc., 421 So.2d 275 (La.App. 4th Cir.1982). Accordingly, we find that the trial court was clearly wrong to award $1,500 in general damages to plaintiff for pain and |flsuffering. We also note that defendant presented no testimony concerning the cost, if any, for disassembling the transmission.

Conclusion

For the foregoing reasons, the judgment of the trial court ordering defendant to return plaintiffs vehicle upon payment of the $85 towing fee is affirmed. The judgment of the trial court awarding plaintiff $1,500 in general damages, however, is reversed. Costs of this appeal are to be split evenly by the parties.
AFFIRMED IN PART AND REVERSED IN PART.

. This amount includes: Rebuilt transmission-$l,500; Towing — $85; Shift cable — $69; Labor on cable — $85; Fluid — $45; and Tax— $178.22.

. From the outset we note the informality of pleadings in a small claims court. Defendant’s response letter clearly indicated his claim for payment, although not specifically labeled a reconventional demand.