961 So.2d 473 (2007)
Mark MOREHOUSE
v.
SOUTHERN UNIVERSITY, BATON ROUGE CAMPUS.
No. 2006 CA 1184.
Court of Appeal of Louisiana, First Circuit.
May 4, 2007.
*474 J.A. Smith, III, Baton Rouge, Counsel for Plaintiff/Appellant Mark Morehouse.
Winston DeCuir, Linda Law Clark, Baton Rouge, Counsel for Defendant/Appellee Southern University.
Robert R. Boland, Jr., Baton Rouge, Counsel for Defendant/Appellee State Civil Service Commission.
Before: PETTIGREW, DOWNING, and HUGHES, JJ.
HUGHES, J.
This appeal by plaintiff, Mark Morehouse, concerns his termination by defendant, Southern University (Southern), in December 2003. After being terminated, Mr. Morehouse appealed to the Louisiana Civil Service Commission (Commission), which held hearings on the matter in the summer of 2004 that were conducted by a referee. After those hearings, questions arose regarding whether Mr. Morehouse was a permanent employee at the time of his termination and entitled as such to enhanced civil service procedural rights. After a hearing solely on that issue, Mr. Morehouse was found not to be a permanent employee. As such, he was subject to "at-will" termination without further proceedings. Pursuant to Article X, Section 12 of the Louisiana Constitution, Mr. Morehouse has appealed directly to this *475 court.[1] For the following reasons, we reverse and remand.

FACTS AND PROCEDURAL STANCE
Mr. Morehouse began work as a police officer at Southern on September 3, 2002. On his first performance review, dated February 16, 2003 he received satisfactory remarks from his supervisors and was recommended for permanent status and a merit increase in pay. The recommendation reached Southern's human resources office for action. At that point in the process, Mr. Morehouse's merit increase recommendation was placed into the system, but due to a clerical error, the recommendation for permanent status never reached Frances Smith, the university's assistant vice president for human resources and appointing authority for all civil service matters within the Southern system.
Without Ms. Smith's review and directive to process the recommendation, Mr. Morehouse never technically achieved permanent status despite his superior's recommendation that he be made permanent after six months. Although the usual probation period was one year, it does not appear either that he achieved permanent status in September 2003 after a full year on the job.
On October 8, 2003 the Southern police department notified all officers that "it is mandatory for all officers to work the home football games" and that if "circumstances arise whereby you are unable to work the game, please give us at least 24-hour prior written notice and/or documentation." Without providing the required written notice, Mr. Morehouse failed to report for work at the university's October 25, 2003 home game, for which he received a written reprimand from Captain Sandra Knighton. Again without providing the required notice, Mr. Morehouse also failed to work the November 1, 2003 home game. He received another written reprimand from Capt. Knighton that recommended a five-day suspension without pay. That document also advised Mr. Morehouse that his "continuing failure to comply with departmental regulations . . . may result in termination of [his] employment with this department."
On November 7, 2003 the university notified all officers that the November 8, 2003 home game had been moved to an earlier start time; shift schedules were adjusted accordingly. Officers normally scheduled for the shift beginning at 3:00 p.m. (including Mr. Morehouse) were to report at 8:00 a.m. Mr. Morehouse reported at 3:00 p.m. This lateness resulted in an immediate administrative suspension and a third written communication, this time from the university police chief Dale Flowers, who wrote that he was recommending immediate termination.
Chief Flowers wrote to Ms. Smith shortly thereafter and recommended termination. Mr. Morehouse was advised of his impending termination on December 5, 2003, he was then formally terminated in a December 19, 2003 letter signed by the university system president. The letter advised that Mr. Morehouse had the right to appeal the termination to the Commission. Mr. Morehouse filed his appeal timely in January 2004. Concerning the games that he missed on October 25, 2003 and November 1, 2003, Mr. Morehouse asserted that his supervisors gave him oral permission to the effect that he could not be "forced to *476 work on his day off" even if it was a game day. Concerning his lateness to the November 8, 2003 game, Mr. Morehouse claimed that he never received the memo to report early.
A Commission referee conducted hearings on June 22, June 23, and July 15 of 2004. At some point following the hearings but before a decision or opinion was issued, the referee became aware that Mr. Morehouse might not have been a permanent employee at the time of his termination. If so, then Mr. Morehouse was not actually entitled to the extensive procedural due process he had already received. The referee called for a status conference on this issue in October 2005 and a hearing was held in January 2006.
The referee's opinion was released on February 1, 2006. The referee found that Mr. Morehouse was at no pertinent time a permanent employee of Southern and thus could be dismissed at will without further civil service procedural due process. Mr. Morehouse was given the opportunity to amend his appeal to claim discrimination or a specific violation of the civil service rules for probationary separation;[2] but he did not do so. Mr. Morehouse next applied for Commission review of the referee's decision, which was denied in a March 22, 2006 notice of decision affirming the referee's finding that Mr. Morehouse was a probationary employee subject to termination at will by Southern. This appeal followed.[3]
Mr. Morehouse alleges that the Commission referee erred in: (1) reopening the case after it was fully tried on the merits in the summer of 2004 and both parties had rested their cases, and (2) in finding on the employment status issue that he was not a permanent employee at the time of his termination.

DISCUSSION
We note at the outset that on appeal, factual determinations of the Commission or a referee should be given great weight and should not be reversed unless they are clearly wrong or manifestly erroneous. Additionally, decisions or actions of the Commission or a referee should not be reversed unless they are arbitrary, capricious, or an abuse of discretion. However, with respect to Commission decisions as to jurisdiction, procedure, and interpretation of laws and regulations, the judicial review function is not so limited. Rather, the court performs its traditional plenary functions and applies the "error of law" standard. James v. LSU Health Sciences Center, Medical Center of Louisiana at New Orleans, XXXX-XXXX, p. 3 (La.App. 1 Cir. 11/8/02), 834 So.2d 470, 472.

Assignment of Error #1
Mr. Morehouse's first assignment of error alleges that the civil service referee erred in re-opening the case for hearing on the subject of his employment status well after the time when the merits of the matter had been heard and both parties had rested their cases. He argues that the referee's action violated principles of estoppel and due process, the limited and delegated authority of civil service referees, and Civil Service Rule 13.19(m), which prevents an appointing authority from supplementing or enlarging charges or allegations in a letter of termination.[4]
*477 Southern argues that the principle of estoppel is inapplicable here, that the referee did not exceed her legal authority in holding the special hearing on Mr. Morehouse's employment status, that Mr. Morehouse's due process rights were not violated, that Civil Service rule 13.19(m) did not apply in these circumstances, and that Civil Service rule 13.14[5] grants broad authority to the Commission and its referees to determine the viability of an action, which includes the power to act on their own motion at any time. Pursuant to the principles noted above, we review for legal error the referee's decision to hold a special hearing for the purpose of determining Mr. Morehouse's employment status at the time Southern terminated him.
Mr. Morehouse's counsel raised these objections at the outset of the hearing. The referee responded that determination of an employee's status did not constitute an enlargement or supplementation of the original allegations made by an appointing authority but, rather, amounted to a jurisdictional question as to whether the case was properly before a Commission referee. The referee also concluded that the special hearing on Mr. Morehouse's employment status did not amount to either a re-hearing or a re-opening of the matter because a final opinion in writing had never been issued and also that the hearing served purposes of efficiency and the need for a complete record subject to appeal either at the Commission or judicial level.
Few cases appear to exist on this particular issue, but our reading of several Civil Service Rules convinces us that the referee here was well within her legal authority to call the special hearing on Mr. Morehouse's employment status. Rule 13.14(d), the text of which appears supra at note 4, allows civil service referees to dispose of groundless appeals on their own motions. In addition, Rule 13.20(b)[6] provides referees with subpoena powers and Rule 13.21(a)[7] allows referees to "to order the appearance of witnesses and compel the production of books and papers pertinent to the issues involved in any appeal." As the question whether Mr. Morehouse was a probationary or permanent employee at the time of his termination was not a supplementation or enlargement of the substantial issues at hand, but was pertinent to the referee's ability to determine the propriety of Mr. Morehouse's appeal, we conclude that the referee committed no *478 legal error in calling the special hearing. This assignment of error is without merit.

Assignment of Error # 2
Mr. Morehouse's second assignment of error challenges the referee's decision on the merits of the specific issue that Mr. Morehouse was not a permanent employee at the time of his termination. The referee considered Mr. Morehouse's evidence, particularly the February 16, 2003 document recommending permanent status, but concluded that Mr. Morehouse was not a permanent employee at the time of his termination. The referee's opinion emphasized as determinative the fact that no actual "appointing authority"[8] at Southern had taken "conscious action . . . to confer permanent status" by certifying to the Commission that Mr. Morehouse had "met the required standard of work" during his probationary period.
Mr. Morehouse acknowledges that he did not achieve permanent status as a formal matter, but he argues that the Supreme Court has recognized the possibility that a procedural due process property interest in a government benefit or service may be conferred in a tacit or implied manner.[9] Specifically, Mr. Morehouse points to the following language in the Supreme Court case of Perry v. Sindermann, 408 U.S. 593, 92 S.Ct. 2694, 2695, 33 L.Ed.2d 570 (1972):
A person's interest in a benefit is a `property' interest for due process purposes if there are such rules or mutually explicit understandings that support his claim of entitlement to the benefit . . . Explicit contractual provisions may be supplemented by other agreements implied from `the promisor's words and conduct in light of the surrounding circumstances.' . . . `(t)he meaning of (the promisor's) words and acts is found by relating them to the usage of the past.'
Perry, 408 U.S. at 601-02, 92 S.Ct. at 2699-2700.
Mr. Morehouse correctly asserts that our supreme court adopted this jurisprudence in Driscoll v. Stucker, XXXX-XXXX, p. 10 (La.1/19/05), 893 So.2d 32, 41-42. Although the facts in that case are not quite on point with the matter here, the supreme court found there that the plaintiff, a doctor, had shown that upon successful completion of the defendant school's medical program, he acquired a "legitimate claim of entitlement," and thus a protected property interest, in receiving a recommendation from the school that he be permitted to take the board certification exam in his field; he could not take the exam without such a recommendation. The court continued:
Existing rules or understandings stemming from independent sources such as state law create and shape what property interests are subject to due process protection under the Fourteenth Amendment. Board of Regents of State Colleges v. Roth, 408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972). Explicit contractual provisions or "other agreements implied from the promisor's words or conduct in light of the surrounding circumstances" may also create property interests. [Perry, 408 U.S. at 601-02, 92 S.Ct. at 2700].
*479 Driscoll, XXXX-XXXX at p. 10, 893 So.2d at 41-42.
Mr. Morehouse argues that: (1) his department chief's clear recommendation that he receive permanent status and (2) Southern's obvious treatment of him as a permanent employee throughout this episode, essentially its "words or conduct in light of the surrounding circumstances," combined to create an implied or tacit understanding that he had achieved permanent status such that a due process property right had attached. He claims that, as such, he is entitled to all available procedural due process, including a resolution on the merits of his case as heard by the civil service referee.
Southern argues in response that although Mr. Morehouse received his department's recommendation for permanent status, no formal appointing authority at the university ever took the necessary affirmative or actual clerical steps to complete the process. As such, Mr. Morehouse cannot have attained permanent status "by default or inaction." Southern refers for support to Pope v. New Orleans City Park, 95-1634 (La.App. 1 Cir. 4/4/96), 672 So.2d 388. In that case,[10] this court recognized a substantive change made by the Commission to Civil Service Rule 9.2 in 1986. Under the new rule,[11] a probationary employee can no longer attain permanent status by default upon completion of a six-month probationary period. A clear and express statement of certification by the appointing authority of the entity is now required on a standardized form.
Clearly, this did not happen in Mr. Morehouse's case. But Southern's argument fails in its attempt to equate the Pope rule prohibiting default acquisition of permanent status with the Roth and Perry rules that an employing entity's actions or conduct may confer upon an employee a property interest in the procedural rights of permanent status for due process purposes.[12] Here, Southern's actions and conduct vis ą vis Mr. Morehouse reflect a belief and understanding on the part of Southern personnel that Mr. Morehouse *480 was indeed a permanent employee for all intents and purposes.
To wit, we relate the following from the record. Frances Smith testified at the special hearing on behalf of Southern. She is currently the assistant to the president of the Southern University system, but at the pertinent time she was the university's assistant vice president for human resources, counsel to the president, and the designated appointing authority in all matters dealing with classified employees at Southern. She testified: (1) that a series of internal difficulties and civil service compliance problems plagued Southern's human resources department during the time at issue, (2) that a department head's recommendation that an employee receive permanent status was normally approved by the human resources department and signed by the chancellor as a matter of course, and (3) that some error occurred in the human resources department's usual processes to keep Mr. Morehouse from obtaining permanent status upon his department chief's recommendation. Ms. Smith also testified that at the time of Mr. Morehouse's termination, he was treated like a permanent employee, i.e., fired for cause, provided with a formal letter of termination, and given due process rights to appeal or respond that would not have been afforded to a probationary employee.
There seems little doubt but that the university itself understood Mr. Morehouse to be a permanent employee as of February 2003. This understanding could also explain why, even if Mr. Morehouse was not formally made permanent in February 2003 after six months, the university's human resources department took no action to either convert him to permanent status or else "separate" him on his one-year anniversary. That date fell in September 2003, weeks before any of the problems with his attendance to work football games arose.
In light of the foregoing and pursuant to the Roth and Perry jurisprudence, we conclude that Southern's "words or conduct in light of the surrounding circumstances" amounted to an implied or tacit understanding that Mr. Morehouse had achieved permanent status such that a property interest or right attached for procedural due process purposes. As such, Mr. Morehouse is entitled to all available procedural due process, including a resolution on the merits of his case as heard by the Commission referee. As the matter has already been heard on the merits by a Commission referee, but no opinion has yet been issued, resolution may be effectively and efficiently had at that level; we remand to the Commission for further proceedings in accordance with this decision.

CONCLUSION
For the above and foregoing reasons, we reverse and remand this matter to the Louisiana Civil Service Commission for further proceedings in accordance with this decision. Costs in the amount of $389.00 will be assessed against defendant, Southern University.
REVERSED AND REMANDED.
NOTES
[1] In pertinent part, "[t]he final decision of the commission shall be subject to review on any question of law or fact upon appeal to the court of appeal wherein the commission is located, upon application filed with the commission within thirty calendar days after its decision becomes final."
[2] "Separation" is the term used by the Commission for termination of an employee.
[3] See supra note 1.
[4] In pertinent part, "the charges expressed in writing by the appointing authority as cause for demotion, suspension, dismissal, or other action, shall not be accepted as prima facie true. Evidence shall not be received from an appointing authority to supplement or enlarge the charges contained in such written document. The appellant may rebut any proof offered by the appointing authority in support of the charges."
[5] 13.14 Summary Disposition of Appeal.

(a) At any time after the docketing of an appeal a written request may be filed by any interested party for summary disposition thereof on any of the following grounds:
1. That the Commission lacks jurisdiction of the subject matter, or of the person against whom relief is sought.
2. That the appellant has no legal right to appeal.
* * *
(d) The Commission or a referee, on its or his own motion, may at any time summarily dispose of an appeal on any of the grounds listed in Subsection (a) hereof or in accordance with the provisions of Rule 13.19(e).
[6] "A referee shall have subpoena power and power to administer oaths as well as the powers granted in this Chapter."
[7] "The Commission, each member thereof, the Director, the Deputy Director, any referee appointed by the Commission, and any specially designated agent of the Commission shall have the power to order the appearance of witnesses and compel the production of books and papers pertinent to the issues involved in any appeal, provided such witnesses and such books and papers are within the State."
[8] This is a technical civil service term defined by Rule 1.4 as "the agency, department, board, or commission, and the officers and employees thereof authorized by statute or by lawfully delegated authority to make appointments to positions in the State Service."
[9] See Perry v. Sindermann, 408 U.S. 593, 601, 92 S.Ct. 2694, 2699, 695, 33 L.Ed.2d 570 (1972); Board of Regents of State Colleges v. Roth, 408 U.S. 564, 577, 92 S.Ct. 2701, 2709, 33 L.Ed.2d 548 (1972).
[10] On the surface, the facts in Pope appear to be on point with those in this case, but a closer reading brings forth the differences between the two. In Pope, as here, the worker was also recommended for permanent status after just six months, but his paperwork indicates that this did not occur because the worker was only on temporary status at the time, not probationary status. Pope, 95-1634 at p. 2, 672 So.2d at 389. It does appear that the change was indeed made at that time to convert him to probationary status. Id. The remainder of the case deals with whether the worker could automatically acquire permanent status thereafter in light of intermittent terminations and returns to temporary status as well as without any further express recommendation by his superiors that he be converted to permanent status. Some clerical error or "administrative oversight" did occur at one point during what appears to have been a rocky three years of employment, but the error does not appear to have concerned an express recommendation for permanent status that went unprocessed, as is the situation in this case. Id. at pp. 2-3, 672 So.2d at 389.
[11] The rule currently and at the time in question reads as follows:

(a) Permanent appointment of a probationary employee shall begin upon certification by the appointing authority. Certification will consist of a statement in the "remarks" section of the Standard Form I, "I certify that this employee has met the required standard of work during the probationary period."
(b) A permanent appointment must be reported by Standard Form 1.
(c) The appointing authority shall separate employees who have not been certified as permanent at the end of the twelve month probationary period in accordance with the provisions of Rule 9.1(e).
[12] As discussed supra in note 9, the facts of Pope are also insufficiently on point with those here to be controlling precedent.