MARK MOREHOUSE
v.
SOUTHERN UNIVERSITY, BATON ROUGE CAMPUS
No. 2008 CA 1943
Court of Appeals of Louisiana, First Circuit.
March 27, 2009.
Not Designated for Publication
J. ARTHUR SMITH, III, Counsel for Plaintiff/Appellant Mark Morehouse.
LINDA LAW CLARK, WINSTON G. DECUIR, Jr., Counsel for Defendant/Appellee, Southern University-Baton Rouge Campus.
Before: PETTIGREW, McDONALD, and HUGHES, JJ.
HUGHES, J.
This is an appeal from the Louisiana Civil Service Commission ("Commission") by a former Southern University police officer whose termination was upheld by the Civil Service Commission. For the reasons that follow, we affirm.

FACTS AND PROCEDURAL HISTORY
Beginning in 2003, the Southern University police department made it mandatory for its officers to work overtime assignments at the university's home football games. An October 8, 2003 memorandum to all department officers from Lieutenant Charles Toliver and Sergeant Charlene Anderson stated:
This is a reminder that it is mandatory for all officers to work the home football games.
The Southern University Police Department Standard Operating Procedures Manual General Order 350 III-A states: "All members of the SU Police Department shall be expected to work overtime assignments as needed and as directed by the Chief of Police or other command level authority, "

General Order 350 IV-F states: "All member(s) of the department shall be subject to work overtime assignments when in the opinion of the Chief of Police full departmental involvement of the members is required to meet a particular law enforcement objective. Included but not limited to are [sic]: Natural Disasters, Chemical Spills and/or emergency evacuations of people, man made disasters, football games and other supporting [sic] events, and other special events that may occur from time to time or as directed by the Chief of Police."

If circumstances arise whereby you are unable to work the game, please give us at least 24-hour prior written notice and/or documentation.
Plaintiff, Mark Morehouse, had been an officer for the university police department since 2002. He worked the first few home games of 2003 but did not show up to work the October 25, 2003 or the November 1, 2003 football games. The university alleges he failed to supply the requisite twenty-four hour written notice before failing to work these games. Although Mr. Morehouse showed up to work the November 8, 2003 football game, he reported at 3:00 p.m., while the university claims he was scheduled to report at 8:00 a.m.
After the October 25, 2003 game, the police department's Captain Sandra Knighton sent a letter to Mr. Morehouse, stating:
On Wednesday, October 8, 2003 you were issued the attached letter dated October 8, 2003 regarding reporting for home football games. In that letter, from Lieutenant Charles Toliver and Sergeant Charlene Anderson, you were reminded of General Order 350 IV-F, which requires all officers to work home football games. The letter explained that a 24-hour prior written notice was necessary when an officer is unable to work a game.
This letter shall serve as a written reprimand for your failure to follow General Order 350 IV-F. Also, it shall serve as a written reprimand for failing to give written notice and for not working the home football game of October 25, 2003. This written reprimand will become a part of your permanent Civil Service record.
You are hereby advised that should you fail to report for duty as assigned for the remaining two (2) home football games, or give prior notice as previously instructed, more severe disciplinary action will result.
After Mr. Morehouse failed to report to work for the November 1, 2003 game, Captain Knighton sent another letter reprimanding him for his failure to report for work and his failure to supply the required twenty-four hour advance written notice of his inability to do so. Captain Knighton informed Mr. Morehouse that she was recommending that disciplinary action be taken against him, in the form of a five-day suspension without pay. Captain Knighton further informed Mr. Morehouse that his continued failure to comply with police department rules "may result in termination of your employment with this department."
On November 7, 2003, the university police department notified all officers by means of a written memorandum that the November 8, 2003 home game had been moved to an earlier start time; shift schedules were adjusted accordingly. Officers normally scheduled for the shift beginning at 3:00 p.m. (including Mr. Morehouse) were to report at 8:00 a.m. Mr. Morehouse failed to report to work the November 8, 2003 game until 3:00 p.m. This tardiness resulted in an immediate administrative suspension and a third written communication, this time from university police chief Dale Flowers, who wrote that he was recommending termination. In his letter to Mr. Morehouse, Chief Flowers detailed the circumstances involving the three game dates and informed Mr. Morehouse that his refusal to obey the orders of his supervisors, pertaining to his assignments to work the October 25, 2003, November 1, 2003, and the November 8, 2003 football games, amounted to "flagrant insubordination and disrespect for authority."
Mr. Morehouse was advised of his impending termination on December 5, 2003; he was then formally terminated in a December 19, 2003 letter signed by the university system president. The letter advised that Mr. Morehouse had the right to appeal the termination to the Commission. Mr. Morehouse filed his appeal timely in January 2004. Concerning the games that he missed on October 25, 2003 and November 1, 2003, Mr. Morehouse asserted that his supervisors gave him verbal permission to the effect that he could not be "forced to work on his day off even if it was a game day. Concerning his tardiness to the November 8, 2003 game, Mr. Morehouse claimed that he never received the memo instructing officers to report early.
A Commission referee conducted hearings on June 22, June 23, and July 15 of 2004. At some point following the hearings but before a decision or opinion was issued, the referee became concerned that Mr. Morehouse might not have been a permanent employee at the time of his termination. If so, Mr. Morehouse was not entitled to the extensive procedural due process accorded permanent employees. The referee held a hearing on the issue in January 2006, and subsequently ruled that Mr. Morehouse had only the status of a probationary employee of the university, and that his employment was terminable at the will of the university, rather than subject only to just cause. Mr. Morehouse appealed to this court, in Morehouse v. Southern University, Baton Rouge Campus, XXXX-XXXX (La. App. 1 Cir. 5/4/07), 961 So.2d 473, writ denied. XXXX-XXXX (La. 9/21/07), 964 So.2d 333, wherein it was concluded that Southern's words or conduct in light of the surrounding circumstances amounted to an implied or tacit understanding that Mr. Morehouse had achieved permanent status such that a property interest or right attached for procedural due process purposes. As such, this court ruled that Mr. Morehouse was entitled to all available procedural due process, including a resolution on the merits of his case as heard by the Commission referee. The matter was remanded to the Commission for further proceedings in accordance with the decision of this court. Morehouse v. Southern University, Baton Rouge Campus, XXXX-XXXX at p. 12, 961 So.2d at 480.
On remand, the original referee presiding over the case recused herself, and another referee was substituted. The second referee notified the parties of the substitution and that, after the time period granted for the submission of motions and briefs by the parties, he would be deciding the case based on the record, including the testimony and exhibits received on the prior hearing dates. No objection appears in the record to the substitution of one referee for another. In fact, Mr. Morehouse had moved for recusal of the first referee and thereafter requested summary disposition of the matter. The decision of the referee was rendered in February 2008, denying Mr. Morehouse's appeal, and was adopted by the Commission in June 2008.
Mr. Morehouse now appeals to this court, asserting the following assignments of error: (1) the Commission erred in concluding that the appointing authority carried its burden of proof of legal cause for disciplinary action against him; (2) alternatively, the Commission erred in failing to find that his termination was not commensurate with his infraction, if any.

DISCUSSION
A final decision of the Commission is subject to review by the court of appeal on any question of law or fact pursuant to LSA-Const. Art. X, § 12(A).[1]
The standard of review set forth in Stobart v. State, Department of Transportation and Development, 617 So.2d 880, 882 (La. 1993), is applicable, and a reviewing court should not disturb factual findings made by the Commission in the absence of manifest error. Thus, in order to reverse a factual finding made by the trier-of-fact the appellate court must: (1) find from the record that a reasonable factual basis does not exist for the finding, and (2) determine that the record establishes that the finding is clearly wrong (manifestly erroneous). Burst v. Board of Commissioners, Port of New Orleans, 93-2069, pp. 4-5 (La. App. 1 Cir. 10/7/94), 646 So.2d 955, 958, writ not considered, 95-0265 (La. 3/24/95), 651 So.2d 284. See also Bannister v. Department of Streets, 95-0404, p. 8 (La. 1/16/96), 666 So.2d 641, 647; Khosravanipour v. Department of Transportation and Development, 93-2041, p. 7 (La. App. 1 Cir. 10/7/94), 644 So.2d 823, 826-27, writ denied. 94-2729 (La. 1/6/95), 648 So.2d 930.[2]
The appropriate standard of review of an action by the Civil Service Commission is to determine whether the conclusion reached by the Commission was arbitrary and capricious. A conclusion of a public body is "capricious" when the conclusion has no substantial evidence to support it or the conclusion is contrary to substantiated competent evidence. The word "arbitrary" implies a disregard of evidence or of the proper weight thereof. Khosravanipour v. Department of Transportation and Development, 93-2041 at p. 8, 644 So.2d at 827 (citing Coliseum Square Association v. City of New Orleans, 544 So.2d 351, 360 (La. 1989); Newman v. Department of Fire, 425 So.2d 753, 754 (La. 1983); Casse v. Department of Health and Hospitals, 597 So.2d 547, 551 (La. App. 1 Cir. 1992)).
As a general rule, a civil service employee's failure to follow a supervisory directive is insubordination, provided that the order is not manifestly illegal or immoral. Lyons v. Grambling State University, XXXX-XXXX (La. App. 1 Cir. 5/2/08) (unpublished opinion) (2008 WL 2066275) (citing Bannister v. Department of Streets, 666 So.2d at 647-48).
In his first assignment of error, Mr. Morehouse contends the Commission erred in concluding that the appointing authority carried its burden of proof of legal cause for disciplinary action against him. After a thorough review of the record presented on appeal in this case, we are unable to say that a reasonable factual basis did not exist for the decision of the Commission.
Mr. Morehouse admitted that he received the October 8, 2003 departmental memorandum reminding officers that it was "mandatory for all officers to work the home football games," although he claims he did not receive it until October 23, 2003. Further, Mr. Morehouse indicated that he was aware this memorandum instructed officers to give a twenty-four hour prior written notice if an officer was unable to work a game. Nevertheless, Mr. Morehouse stated that he thought a verbal notice was sufficient, and he felt that when he verbally notified a supervising officer of his inability to attend the October 25, 2003 or the November 1, 2003 football games and received a response of "okay," even though he was verbally referred to a higher ranking officer, he felt he had been excused from working the games at issue. (The supervising officers involved denied verbally excusing Mr. Morehouse from working at the games.)
Putting aside for the moment the fact that this type verbal procedure was not the official written policy of the department, Mr. Morehouse received a formal notification to this effect after he failed to appear for work at the October 25, 2003 game. In a letter dated October 30, 2003, Captain Sandra Knighton reprimanded Mr. Morehouse for failing to follow the departmental orders referenced in the October 8, 2003 memorandum, which had reminded officers that working home football games was mandatory and that a twenty-four hour written notice was required in advance of an inability to work. Captain Knighton further informed Mr. Morehouse that "should you fail to report for duty as assigned for the remaining two (2) home football games, or give prior notice as previously instructed, more severe disciplinary action will result." Mr. Morehouse does not dispute the fact that he received this letter of reprimand. Nevertheless, Mr. Morehouse once again claimed that he gave a verbal notice that he would be unable to work the November 1, 2003 game. In the face of having been officially notified multiple times in writing that a written notice was required to excuse officers from the mandatory job assignment of working home football games, Mr. Morehouse's claim that he misunderstood and thought a verbal notice was sufficient is implausible and unpersuasive.
Likewise, Mr. Morehouse's claim that he alone failed to receive notice of the change in the November 8, 2003 game time and thus the beginning shift time change is not persuasive,[3] particularly given that Mr. Morehouse admitted he was present on campus socializing during the day of the game; thus, he surely was aware that the beginning time of the game had changed. Knowing that university police department officers were scheduled to be in place well in advance of the beginning of home games to manage the arrival of the 25,000 plus fans and other guests who entered the campus on game day, Mr. Morehouse should have been aware that a change in game time would occasion a change in the officers' beginning shift times. Even if he had not in fact received the official departmental notice of the scheduling change, Mr. Morehouse should have been alerted by the change in game time to re-check his beginning shift time, and should have been motivated to arrive at work on time considering the November 6, 2003 letter of reprimand warning him that any further violation of departmental regulations could result in termination. Moreover, we cannot say the Commission's decision to credit the testimony presented to the effect that Mr. Morehouse received all pertinent notices concerning his required presence at these home games was manifestly erroneous.[4]
Mr. Morehouse argues in support of his appeal that the departmental directive for officers to work all home football games was not an "order," which he defines as the "clear and unambiguous directive of a superior." Rather, he states this represents a "policy," which he contends is a "procedural statement" that "can be open to interpretation in both its meaning and as to its interpretation." We disagree. University police officers were directed to work at all home football games; this was declared to be "mandatory." Although a procedure was given by which an officer might be excused (i.e., by giving at least twenty-four advance written notice and/or documentation), such a procedure did not render the home game work requirement optional.
Accordingly we conclude there was a reasonable factual basis in the record for the finding of the Commission that Mr. Morehouse was "insubordinate and demonstrated an utter disregard for the authority of his superiors." We are unable to say this finding was clearly wrong.
Mr. Morehouse further contends on appeal that termination was not commensurate with his infraction. However, by its very nature the refusal to obey a direct order impairs the efficient operation of a public service. Where the public service is quasi-military in nature, the chain of command and following orders may mean the difference between life and death, and order or disorder; orders in such a setting must be strictly obeyed. Therefore, we conclude that legal cause existed to support Mr. Morehouse's termination from employment. See Anderson v. Department of Public Safety and Corrections, XXXX-XXXX, pp. 9-10 (La. App. 1 Cir. 3/26/08), 985 So.2d 160, 165-66; Malone v. Department of Corrections, Louisiana Training Institution-Ball, 468 So.2d 839, 840-41 (La. App. 1 Cir. 1985). We are unable to say the action taken was arbitrary or capricious.[5]

CONCLUSION
For the reasons assigned herein, the judgment of the Civil Service Commission is affirmed; all costs of this appeal are to be borne by the appellant, Mark Morehouse.
AFFIRMED.
NOTES
[1] Article X, § 12 of the Louisiana Constitution provides, in part: that "[t]he final decision of the commission shall be subject to review on any question of law or fact upon appeal to the court of appeal wherein the commission is located, upon application filed with the commission within thirty calendar days after its decision becomes final."
[2] We note that even though the standard of review set forth in LSA-R.S. 49:964(G) applies to district courts when they sit in an appellate mode and review an administrative agency's final decision or order in an adjudication proceeding, judicial review of final decisions of the Commission does not lie in any district court but is constitutionally vested in the First Circuit Court of Appeal, pursuant to LSA-Const. Art. X, § 12. Thus, the standard of review contained in LSA-R.S. 49:964(G) does not apply to review of decisions of the Commission, because judicial review is performed by the First Circuit Court of Appeal, not by a district court. Ward v. Department of Public Safety and Corrections, 97-1109, pp. 3-4 (La. App. 1 Cir. 9/18/98), 718 So.2d 1042, 1044.
[3] Individual written notices were left for each officer at the department's time clock where each officer punched in and out to begin and end each shift. Despite Mr. Morehouse's statement in brief to this court that the clerical worker charged with distributing memoranda (Cenetra Dunn) "testified that she never saw" the October 8, 2003 memorandum, Ms. Dunn merely indicated that she could not recall having seen that particular document. However, Ms. Dunn testified that, depending on Chief Flowers' instructions she would either place memoranda next to the time clock or in each officer's individual time card slot (sometimes attached to the time card by a paperclip). Ms. Dunn also stated that when she distributed memoranda she never "skipped" an officer.
[4] We reject Mr. Morehouse's assertion to this court that the referee substituted for the one who presided over the hearing, during which testimony of the witnesses was taken, should not have resolved issues of credibility. After notification of the substitution by the referee, even though ample time was given for the submission of motions and briefs by the parties, Mr. Morehouse raised no objection to the decision of this case by the substitute referee while the case was before the Commission. Rather, Mr. Morehouse urged summary disposition of the issues remanded to the Commission. Appellate courts generally find it inappropriate to consider an issue raised for the first time on appeal that was not pled, urged, or addressed in the court below. Johnson v. State, 2002-2382, p. 4 (La. 5/20/03), 851 So.2d 918, 921; Geiger v. State ex rel. Department of Health and Hospital, 2001-2206, p. 11 (La. 4/12/02), 815 So.2d 80, 86; Jackson v. Home Depot, Inc., XXXX-XXXX, pp. 6-7 (La. App. 1 Cir. 6/10/05), 906 So.2d 721, 725; Hudson v. East Baton Rouge Parish School Board, XXXX-XXXX, p. 3 (La. App. 1 Cir. 3/28/03), 844 So.2d 282, 285; Mobil Exploration & Producing U.S. Inc. v. Certain Underwriters Subscribing to Cover Note 95-3317(A), 2001-2219, p. 36 (La. App. 1 Cir. 11/20/02), 837 So.2d 11. 41. writ denied. XXXX-XXXX (La. 4/21/03), 841 So.2d 805, writs denied. XXXX-XXXX, XXXX-XXXX, XXXX-XXXX (La. 5/16/03), 843 So.2d 1129, 1130. See also Uniform Rules-Courts of Appeal, Rule 1-3. Since the Commission was given no opportunity, in the instant case, to rule on Mr. Morehouse's contention, and therefore had no opportunity to remedy any insufficiency, we decline to address this issue, which is presented for the first time on appeal.
[5] Even one specific act of willful disobedience or insubordination may be sufficient legal cause for termination. Ben v. Housing Authority of New Orleans, XXXX-XXXX, p. 5 (La. App. 1 Cir. 5/14/04), 879 So.2d 803, 807.